[Civil No. 2004.   Filed April 8, 1922.]

[205 Pac. 814.]

CHARLES W. FAIRFIELD, as Auditor of the State of Arizona, Appellant, v. GORDON G. HUNTINGTON, Appellee.

1. STATES—APPROPRIATION ON ACCOUNT OF INJURY TO EMPLOYEE NOT A "DONATION"—MORAL OR EQUITABLE OBLIGATION.—Laws of 1921, chapter 169, providing that, on account of injuries sustained by plaintiff arising out of, and in the course of, his employment under the state engineer in highway work, the state shall pay him monthly for life a certain amount on the basis of permanent total disability, does not violate Constitution, article 9, section 7, inhibiting the state from making any "donation"; being based on a "moral or equitable obligation."

2. STATUTES — PROHIBITION AGAINST SPECIAL LEGISLATION WHEN A GENERAL LAW CAN BE MADE APPLICABLE NOT VIOLATED BY APPROPRIATION FOR INJURED STATE EMPLOYEE.—Laws of 1921, chapter 169, providing for a payment to plaintiff on account of injuries arising out of, and in the course of, his employment under the state engineer, founded on an obligation purely moral, cannot be said to violate Constitution, article 4, section 19, subsection 20, prohibiting special legislation "when a general law can be made applicable," the legislature's implied judgment that a general law could not be made applicable not being overruled unless it appear

very clearly from the character of the appropriation that a general law would have been sufficient.

3. CONSTITUTIONAL LAW—PROHIBITION AGAINST EX POST FACTO LAW APPLICABLE ONLY TO CRIMINAL LAW.—The term "*ex post facto law*," within Constitution, article 2, section 25, prohibiting such a law, applies only to statutes dealing with criminal matters, and so not to Laws of 1921, chapter 169, providing for payment to an injured state employee.

4. CONSTITUTIONAL LAW—APPROPRIATION FOR INJURED STATE EMPLOYEE DOES NOT VIOLATE OBLIGATION OF CONTRACT.—Laws of 1921, chapter 169, providing for payment to plaintiff on account of injuries received in the state's employ, passed in recognition of a moral obligation, does not impair the obligation of contract, prohibited by Constitution, article 2, section 25.

APPEAL from a judgment of the Superior Court of the County of Maricopa. R. C. Stanford, Judge. Affirmed.

Mr. W. J. Galbraith, Attorney General, and Mr. George R. Hill, Assistant Attorney General, for Appellant.

Messrs. Baker & Whitney, for Appellee.

McALISTER, J.—The question presented by this appeal is the constitutionality of chapter 169 of the Sessions Laws of the Fifth Arizona Legislature, which became a law on the 23d of March, 1921, and reads as follows:

"An act for the relief of Gordon G. Huntington, injured by an explosion while in the service of the state of Arizona, and making an appropriation therefor.

"Be it enacted by the Legislature of the State of Arizona:

"Section 1. That whereas, Gordon G. Huntington, while in the employ of the state engineer of Arizona, sustained personal injuries arising out of, and in the course of, such employment, resulting in the loss of his right eye and the permanent impairment of the sight of his left eye, causing him to be incapacitated to an extent which is hereby declared

23 Ariz.—34

to be a permament total disability, there is hereby appropriated from the general fund of the state of Arizona, from any moneys not otherwise appropriated, a sufficient amount to pay to the said Gordon G. Huntington the sum of eighty-four dollars and fifty cents ($84.50) per month during the rest of his natural life, which is sixty-five per cent. (65%) of his average monthly wage, computed on the basis of not to exceed one hundred and thirty dollars ($130.00) per month: Provided, that should medical, surgical and hospital or other treatment, including nursing, medicines, medical and surgical supplies, become necessary because of said injury, a sufficient further amount to cover same is hereby appropriated.

"Section 2. The Industrial Commission of Arizona is hereby authorized to make proper claims upon the state auditor for the amount herein specified, and the state auditor shall draw his warrant for such amount, and the state treasurer is authorized and empowered to pay the same: Provided, however, that should there be no Industrial Commission, the superintendent of public health is directed, empowered and authorized to carry out all of the conditions and provisions of this act.

"Section 3. The purposes and intent of this act shall be to give compensation to an employee of the state, injured by an accident arising out of and in the course of his employment and to the extent herein specified, and not for any other purpose to admit the liability of the state for the injury named in the foregoing sections. Provided, however, that the acceptance of any amount or amounts named in this act shall be a full and complete release of any claim or claims which the aforesaid Gordon G. Huntington may now have or might have against the state of Arizona resulting from the injury described in Section 1 of this act."

It appears from the complaint and petition of Gordon G. Huntington that, in pursuance of the provisions of this act, he presented to the state auditor on September 7, 1921, two claims against the state, one for $84.50 and one for $146.54, which had been thereto-

fore approved by A. M. Tuthill, state superintendent of public health, and that said claims were by the auditor disallowed. The prayer is that an alternative writ of *mandamus* issue, directed to the auditor and commanding him to audit and allow the said claims and to draw a warrant on the state treasurer for the amount of the same, or show cause at a later date why he has not done so, and that upon the hearing the alternative writ be made peremptory. The defendant demurred to the complaint and petition chiefly upon the ground that it appears from its face that chapter 169 is unconstitutional and void because it violates the provisions of the state Constitution which prohibit the legislature from enacting, first, legislation making a donation to any individual, association or corporation, and, second, special legislation where a general law can be made applicable. The defendant relied entirely upon his demurrer, which, however, was overruled, and, having specially admitted in his answer "all of the facts in said petition lawfully and sufficiently pleaded," it was thereupon ordered that the alternative writ be made peremptory. From this judgment the defendant appeals.

The only error assigned is the overruling of the demurrer, and the argument in support of this assignment is based upon the following provisions of the state Constitution:

"Neither the state, nor any county, city, town, municipality, or other subdivision of the state shall ever give or loan its credits in the aid of, or make any donation or grant, by subsidy or otherwise, to any individual, association, or corporation, or become a subscriber to, or a shareholder in, any company or corporation or become a joint owner with any person, company, or corporation, except as to such ownerships as may accrue to the state by operation or provision of law." Section 7, art. 9.

"No local or special laws shall be enacted in any of the following cases, that is to say: . . .

"20. When a general law can be made applicable." Subsection 20, § 19, art. 4.

It is contended that chapter 169, which provides that the state shall pay appellee monthly a certain compensation on account of an injury suffered by him as a result of an accident arising out of his employment by the state engineer, is void because it constitutes a "donation" within the meaning of that part of section 7, article 9, above, which says that "neither the state, nor any county, . . . shall ever . . . make any donation or grant, by subsidy or otherwise, to any individual, association or corporation." If by the term "donation," as here used, it was intended to prohibit the legislature from making an appropriation of the character provided for in chapter 169, this contention must prevail, otherwise not.

Appellee was injured while working for the state under the direction of its engineer, who had charge of the construction and maintenance of its highways, and in the performance of his duties as such employee was necessarily discharging a function of state government, since the highways of the state are built and maintained with public funds for the use of the public and without any idea of profit or gain. And, by the great weight of authority, a state, in consequence of its sovereignty, cannot be made to respond in damages for the negligence of its agents, servants, or employees which occurs in the discharge of a governmental function, except in those cases where it has, by constitutional or legislative enactment, expressly assumed such liability, and this court, speaking through Justice BAKER, held in *State v. Sharp,* 21 Ariz. 424, 189 Pac. 631, that Arizona had not, by any act of its legislature brought itself

within the exception. Hence, it is not claimed in appellee's behalf that the state was liable to him when the injury was suffered, but its nonliability at that time is specifically admitted, and upon the undoubtedly correct theory that if it could not have been compelled to pay for an injury resulting from the negligence of its agents, servants, or employees while discharging a function of government, neither could it have been held liable for one arising out of the condition of the employment in which the employee was at the time engaged, and occurring also in the discharge of a governmental function, since the state had assumed liability in neither instance. Appellant argues, therefore, that since chapter 169 is an appropriation in settlement of a claim which the state was under no legal obligation to pay, it amounts merely to a "donation" within the constitutional meaning of this term, and is consequently void.

It is true that if the act were passed solely in the exercise of gratitude and charity and did nothing more than make a gratuitous present of the public funds, the payments authorized by it would be merely donations; but, since it is clear that it was the purpose of the legislature in passing it to recognize a moral obligation then resting upon the state and founded upon equity and justice, regardless of the fact that the state was not liable therefor as a matter of law, the question presents itself whether an appropriation made out of considerations of this kind comes within the constitutional provision prohibiting donations. As used in section 7, article 9, this word has the meaning usually attached to it, which appears in Webster's International Dictionary as a "gift" or "that which is given as a present or gratuitously." The idea it conveys is that of help voluntarily extended in obedience to

a desire to do a charitable act where no duty except to aid a worthy cause demands it, there being no thought or intention on the part of the donor of discharging thereby either a legal or moral obligation due from him to the donee. It prevents the state from becoming a subscriber to a charitable object, either alone or with others; that is, from appropriating its funds to an individual, association, or corporation for a cause having no claim upon the state other than its admitted worthiness, but it does not prevent the recognition of moral obligations founded on justice and equity, even though the state is not liable therefor as a matter of law. Its effect is merely to prohibit the state from assuming the attitude of the person who says: "The cause is a good one, I will contribute to it," but it does not interfere with its taking the position of one who says of a just, though unenforceable obligation: "I owe that, here is your money in payment of it." Parting with money or other thing of value to satisfy a moral or equitable claim, when such action could not be compelled in law, is not making a donation any more than the voluntary payment of a note barred by limitation would be; it is rather the discharge of an honest and just obligation. To hold otherwise is to say that the payment of an admitted indebtedness, not collectible by law, is merely an act of charity, when such is not the case. "That the state," said the New York Court of Appeals, in construing a constitutional provision prohibiting the giving of the public funds to any private enterprise, "cannot give its money for private undertakings or in the exercise of gratitude or charity is firmly established. Const., art. 8, § 9. The legislature, however, is not prevented from recognizing claims founded on equity and justice, though they are not such as could have been en-

forced in a court of law if the state had not been immune from suit." *Munro* v. *State of New York,* 223 N. Y. 215, 119 N. E. 444. The following statement of the rule is found in 26 R. C. L., at page 64:

"The power of the legislature to extend the liability of the state or municipal corporations to pay for injuries caused to private individuals is not limited to the establishment of a rule for the future, but it is generally held that the recognition of a moral, equitable or honorable obligation, such as a just man recognizes in his own affairs, will constitute a sufficiently public purpose to uphold a tax, and that a statute is not unconstitutional which requires the appropriation of the public money to pay a designated claim for loss or injury arising out of the relations of the claimant with the public, and constituting a moral obligation to recompense the claimant of such a character that the legislature might constitutionally have established liability, although there was no legal claim for compensation when the loss or injury occurred. This has been held true whether the absence of legal liability is based upon a general principle of law or upon some irregularity or omission in the statutory prerequisites to liability."

And also in 25 R. C. L., at page 402, appears the following:

"The legislature has a right to appropriate the public funds in discharge of the state's duty, whether the duty be legal or only moral. And the discharge of such an obligation is always regarded as a legitimate exercise of governmental power. An appropriation made in discharge of a moral obligation resting upon the state must be regarded as being for a public purpose, and within the constitutional powers of the legislature, and the fact that a private person may receive the benefit of such an appropriation does not constitute the act of appropriation a private one."

See, also, *Woodall* v. *Darst,* 71 W. Va. 350, Ann. Cas. 1914B, 1278, 44 L. R. A. (N. S.) 83, 77 S. E. 264, 80 S. E. 367; *Cole* v. *State of New York,* 102

N. Y. 48, 6 N. E. 277; *Splittorf* v. *State of New York,* 108 N. Y. 205, 15 N. E. 322; *Sandel* v. *State,* 115 S. C. 168, 13 A. L. R. 1268, 104 S. E. 567; 1 McQuillin on Municipal Corporations, p. 537; 1 Dillon on Municipal Corporations, 5th ed., p. 221.

It is difficult to define, with absolute accuracy, just what is included in the term "moral or equitable obligation," but in all those cases in which the appropriation of the public funds of the state has been upheld upon this ground the state has received some benefit as a state, or the claimant has suffered some direct injury "under circumstances where in fairness the state might be asked to respond—where something more than a mere gratuity was involved." *People* v. *Westchester Nat. Bank,* 231 N. Y. 465, 15 A. L. R. 1344, 132 N. E. 241. "In some instances," says the court in this case, "claims have been allowed where beneficial services have been performed for the state (*Cole* v. *State,* 102 N. Y. 48, 6 N. E. 277); in others where property was furnished it (*O'Hara* v. *State,* 112 N. Y. 146, 8 Am. St. Rep. 726, 2 L. R. A. 603, 19 N. E. 659); or the state received money for land the title to which proved defective (*Wheeler* v. *State,* 190 N. Y. 406, 123 Am. St. Rep. 555, 83 N. E. 54); or work was done, the expense of which in equity the state should bear (*Lehigh Valley R. Co.* v. *Canal Board,* 204 N. Y. 471, Ann. Cas. 1913C, 1228, 97 N. E. 964). In another class of cases the legislature has authorized payment where the claimant had been injured by the negligence of the servants of the state. *Splittorf* v. *State,* 108 N. Y. 205, 15 N. E. 322."

Appellee was not injured by the negligence of the agents, servants, or employees of the state but as a result of an accident arising out of the employment or occupation in which he was engaged. However, "the equity or justice of a claim which the

state may recognize," said the court in *Munro* v. *State of New York,* above, "is not limited by any law . . . to personal injuries arising out of the negligence, as defined in the law at any given time. . . . When a man gives his services or his property to the state under such circumstances that no liability would be created to pay therefor, even if the state were an individual or a private corporation, the legislature may allow such a claim in good morals and fair · dealings. See cases. cited above. Why should there not be a like moral obligation to make some recompense to the man who, in his work for the state, by an unforeseen accident has given his life or limb? The moral obligation may be as urgent in the one instance as the other." Indeed, it would be difficult to imagine a case calling more strongly for the discharge of this duty than that of an employee of the state seriously injured or killed in its service without fault on. his part, but for whose injury or death the state, by reason of its legislature's omission to enact a law to that effect, cannot be compelled to make any recompense whatsoever. Under the same circumstances an individual or corporation would be legally liable. Why, then, should the discharge by the state of such an obligation be regarded as a donation or as anything other than the payment of an honest debt, a thing that the state, as well as every good citizen, should do?

The only cases cited by appellant holding to the contrary are from the Supreme Court of California, whose constitution contains a provision similar in meaning to section 7, article 9, but in which the word "gift" appears, instead of "donation," and in construing it the broad doctrine that a "mere moral obligation will not make a transaction other than a gift" has been laid down in the following

cases: *Molineux* v. *California,* 109 Cal. 378, 50 Am.
St. Rep. 49, 42 Pac. 34; *Conlin* v. *Board of Super-
visors,* 99 Cal. 17, 37 Am. St. Rep. 17, 21 L. R. A.
474, 33 Pac. 753; *Bourn* v. *Hart,* 93 Cal. 321, 27 Am.
St. Rep. 203, 15 L. R. A. 431, 28 Pac. 951. A
number of other California decisions are cited, as
well as one each from Wyoming, Colorado, and New
Mexico, all holding certain appropriations to be
gifts or donations, but these were made for pur-
poses other than the satisfaction of a moral or
legal obligation of the state and are, therefore, not
in point, as the following: For the transportation
of veterans to Gettysburg and return, *McClure*
v. *Nye,* 22 Cal. App. 248, 133 Pac. 1145; for the
benefit of the sufferers from the Tia Juana flood,
*Patty* v. *Colgan,* 97 Cal. 251, 18 L. R. A. 744, 31 Pac.
1133; to county commissioners for holding county
fairs, *Harrington et al.* v. *Atteberry et al.,* 21 N. M.
50, 153 Pac. 1041; for aiding a railroad company in
constructing a tunnel to be used primarily by the rail-
road, *Lord* v. *City & County of Denver,* 58 Colo. 1,
Ann. Cas. 1916C, 893, L. R. A. 1915B, 306, 143 Pac.
284; authorizing tax by counties for aid of fair
associations, *Board of County Commrs. of Carbon
County* v. *Union Pacific R. R. Co.,* 25 Wyo. 463, 171
Pac. 668. In *Bourn* v. *Hart,* above, the doctrine was
first laid down in California that an appropriation
for damages for personal injuries sustained by an
employee of the state while in its service and for
which the state was not responsible constituted a
gift. Chief Justice BEATTY, however, dissented
from that ruling upon the ground that "the word
'gift' was not used in . . . the Constitution in a
sense broad enough to include compensation to a
servant of the state for loss of life or limb in the
discharge of his duties." This view is in line with
the holding of the New York Court of Appeals,

which states the rule we think supported by the better reasoning.

It follows, therefore, that the appropriation in payment of appellee's claim does not constitute a donation, and, since the power of the legislature to render the state liable for injuries of the character of appellee's is unquestioned, that chapter 169 does not violate section 7, article 9, of the Constitution.

It is urged that this act is void because it violates subsection 20 of section 19, article 4, prohibiting the enactment of special legislation "when a general law can be made applicable." We are unable to accept this view, however, because it is the general doctrine "that the legislature is the sole judge whether a provision by a general law is possible under a provision in the Constitution, to the effect that no special law shall be enacted in all cases where general law can be made applicable." 36 Cyc. 991. And there appears no reason why the general rule should not govern in this instance. Before enacting chapter 169, the legislature undoubtedly considered whether a general law could be made applicable to its purpose, and we must assume from the fact that it passed a special one that, in its judgment, the former would not meet its requirements. And, unless it appear very clearly from the character of the appropriation that a general law would have been sufficient, the court would not be justified in holding that a co-ordinate branch of the government abused its discretion in passing a special one. In this instance the adequacy of a general law is not clear, for it was not a matter of the application of a general law to the legal liability of the state for injuries received by its employees while serving in a governmental capacity, but whether a general act could have been made applicable to moral obligations which had arisen or might there-

after arise, not merely because of the state's failure to enact a general law assuming legal liability for such injuries, but from other causes as well. It would be difficult to enact a law applying to the various situations under which the state's moral obligations might arise, and, as said by the Supreme Court of West Virginia in *Woodall* v. *Darst,* above:

"There are many matters that might very justly and properly be considered by the legislature in determining the merits of claims of the same general nature as relator's, which could not well be embodied in a general law. For instance the needs of the claimants and those dependent upon them might very properly influence the legislature in determining the amount it would apply to discharge an *obligation purely moral.* [Italics ours.] The most that we can say is, that it is doubtful if a general law would be as proper to accomplish the purpose which the legislature had in view as the special appropriation, and we must resolve the doubt in favor of the validity of the act."

And the fact that the law was passed for the benefit of only one individual does not make it special legislation, since it was enacted to satisfy an obligation resting upon all the people who constitute the state. The discharge of such an obligation is merely the performance of a public act, and an appropriation for it is not expending the public funds for a private purpose. *Woodall* v. *Darst,* above; 25 R. C. L. 402.

It is also suggested that if the state did assume liability for appellee's injury by the passage of this act, its necessarily retroactive operation invalidates it under the constitutional provision prohibiting *ex post facto* laws. But this term, as we understand it, refers to statutes dealing with criminal matters, though it appears in section 25, article 2, of the Constitution, in connection with the clause prohibit-

ing the enactment of a "law impairing the obligation of a contract," to which reference was probably intended. But this clause does not apply to either, because chapter 169 creates no new obligations; it merely recognizes and discharges one which has rested upon the state since appellee was injured in its service, to wit, his moral and equitable claim to compensation. And since the legislature is not precluded from "recognizing claims founded on equity and justice" the passage of an act clearly in pursuance of this power is not subject to the objection that it impairs the obligation of a contract, because the moral obligation arose at the time of the injury and remained until discharged by the enactment of chapter 169.

It follows, therefore, that appellant's demurrer was properly overruled and that the order making the alternative writ of mandate peremptory was rightly entered. Hence the judgment is affirmed.

ROSS, C. J., and FLANIGAN, J., concur.