## STATE v. CARTER
### (No. 1162; May 29, 1923; 215 Pac. 477)

OFFICERS—EXTRA COMPENSATION—SALARY—CONSTITUTIONAL LAW—STATES—GIFTS OR DONATIONS OF PUBLIC MONEY—PAYMENT OF JUST CLAIM AGAINST STATE IS A PUBLIC PURPOSE—MORAL OBLIGATION OF STATE—APPROPRIATIONS—PRESUMPTION THAT APPROPRIATION WAS WARRANTED—COMPENSATION FOR DEATH OF PUBLIC OFFICER—SPECIAL STATUTES.

1. Extra compensation for extra service rendered by public officers by virtue of proper authority, is not prohibited by Art. III § 30 and 32 of the state constitution.

2. Legal duties connected with an office must be performed for the emolument previously fixed, but legal duties do not extend so far as to require an officer to risk or give his life or incur permanent disablement. A moral duty to risk life or disablement may arise from public necessity, and in such case the constitutional prohibition against extra compensation does not apply to compensation for the death of such officer.

3. The prohibition against donations to individuals by Const. Art. 16, § 6, except for necessary support of the poor, and by Article 3, § 36, cannot be nullified by a simple claim that the recipient of the donation is a poor person.

4. An appropriation for a private purpose is void even if not expressly prohibited by the constitution, since the legislature can levy a tax or make an appropriation only for public purposes.

5. If an appropriation can be said to be in payment of a just claim against the state, the purpose thereof is necessarily public, and it does not constitute a donation or charitable gift.

6. Though in a sense every payment not legally enforceable might be said to be a gift, the constitutional prohibition against donations to individuals is not construed so broadly as that, but permits the state to discharge a moral obligation against it based on equity and justice, even though the claim be not legally enforceable.

7. Though the existence of a moral obligation against the state to pay for services rendered does not always depend upon whether an appropriation for such services could have been made before they were rendered, particularly in cases clearly involving an increase of officers' salaries, the right of the legislature to have made the appropriation in the first place is one of the criteria by which to judge whether a moral obligation exists to pay for the services.

8. The legislature which made an appropriation to compensate the widow of a deputy sheriff for his death in line of duty must be presumed to have investigated the facts leading up to his death, and found them such as to warrant the appropriation.

9. The compensation of the widow of a peace officer of the state who was killed while acting in the line of duty is a moral obligation of the state, in view of the general consensus of opinion sustaining the principle that the risk of an employment should be imposed on the industry, or on society, not on the individual employee, and therefore Laws 1923, c. 110, making an appropriation for that purpose, was not invalid as a donation to an individual.

10. In applying Const. Art. 3, § 27, prohibiting special laws in cases where a general law can be made applicable, the courts will not interfere with the legislative determination that a special law was necessary, at least until it is clear that a general law could have been adopted.

11. A special statute can be adopted to discharge a moral obligation of the state to compensate the widow of a peace officer killed in line of duty, since the legislature must determine from the facts in each case whether the moral

>obligation exists, and to frame a general law providing for such cases pursuant to Const. Art. 3, § 27, would unduly interfere with the legislative discretion to determine what is a moral obligation.

Original proceedings in mandamus between State of Wyoming on the relation of Ida Geneva McPherren against Vincent Carter, State Auditor to require the issuance of a warrant in payment of a claim for the death of her husband an under-sheriff, killed in line of duty, for the payment of which claim an appropriation was made by the legislature. Heard on demurrer to the petition.

*Diefenderfer* and *Wakeman* for relator.

The action involves the validity of Chap. 110, Laws 1923, appropriating three thousand dollars for the relief of relator, whose husband was killed while in the performance of his duties as a public peace officer; payment is resisted by respondent, who questions the validity of the law as a donation of public money; the auditor has no power to question an appropriation act; his duty is to draw his warrant, (C. S. Sec. 124.) Appropriations may be made for the support of the poor (Art. XVI, Sec. 6.) The legislature is the sole judge of the necessity, (Art. XXI, Sec. 14, 12 C. J. 925; 30 Cyc. 1066; Dawgett v. Colgan (Cal.) 14, L. R. A. 474.) Under the rule that the court is limited to an inspection of the law itself, in its consideration of the case it is doubtful whether the Auditor could show an absence of poverty on the part of the beneficiary. (Stevenson v. Colgan, 91 (Cal.) 649, 14 L. R. A. 459; 25 A. S. R. 230; Cooley's Const. Lim. 200, 12 C. J. 787.) The mother's pension and workmen's compensation acts are founded on the same principles, enabling the legislature under its police power to make appropriations for certain purposes. Relator's husband was killed in the performance of his duties as under-sheriff while enforcing laws of the state, thus creating a moral obligation on the part of the state to assist the family of the deceased. (25 R. C. L. 402; U. S. v. Realty Co., 163 U. S. 427; 41 L. ed. 215; 36 Cyc. 894; People v. Bank, 231 N. J.

465; Woodall v. Darst, 71 W. Va. 350; Civ. Fed. v. Company, 61 Pac. 222; Cole v. State, 6 N. E. 277; Munro v. State, 119 N. E. 445.) The payment of a moral obligation by the state is not a gift nor a donation. It is true that California restricted such payments to legal liabilities in a decision by a divided court. (Bourn v. Hart, 93 Cal. 321, 28 Pac. 951.) but the decision stands alone. Every presumption as to the validity of the law must be indulged; it may be regarded as a special allowance for the support of a poor person, or as a payment of a moral obligation; under either view the wisdom or improvidence of its enactment cannot be questioned by the Auditor or by the courts.

*David J. Howell*, Atty. Gen. and *L. C. Sampson*, Deputy Atty. Gen. for respondent.

No money can be paid out of the State Treasury except upon appropriations legally made. It is not only the right, but the duty of the Auditor to inquire as to the validity of appropriations of state funds. Norman v. Board, 93 Ky. 537; State v. Snyder, (Wyo.) 212 Pac. 758; Woodall v. Darst, 71 W. Va. 359; Denmar v. Broderick, 111 Cal. 69; State v. Toppan, 29 Wis. 664; Van Horn v. State, 46 Neb. 62; State v. Kelsey, 44 N. J. Law. 1; Norton v. Shelby Co., 118 U. S. 425.) The law is special, and conflicts with Art. III, Sec. 27, McGarvey v. Swan, 17 Wyo. 138, it provides extra compensation to a public officer and conflicts with Art. III, Sec. 30; it is in effect a donation prohibited by Art. XVI, Sec. 6, State v. Comm., 8 Wyo. 132, the act was not for the relief of the poor. (In re Relief Bills 21 Colo. 62.) Deceased assumed the risks attending his employment and the state is under no legal liability to compensate for any loss sustained while in the discharge of his duty. (Bourn v. Hart, 93 Cal. 321.) An act granting a pension to police officers after twenty years service was construed as an increase of compensation after their term of employment by the Supreme Court of Missouri. (State v. Ziegenhoin, 144 Mo. 283.) The only case supporting Relator's claim is that of Monroe v. State, 119 N. E. 444, wherein a

claim for injury by a lunatic was first allowed by the court of claims of that state.

BLUME, Justice.

This is an action in mandamus, brought in this court against the State Auditor, and arises out of an act of the legislature, Chapter 110, Session Laws of 1923, providing as follows:

"That the sum of three thousand dollars or so much thereof as may be necessary, is hereby appropriated from any funds in the State Treasury not otherwise appropriated for the relief of Ida Geneva McPherren, for the loss of her husband, W. S. McPherren, who was killed in line of duty in 1921, as undersheriff by parties unknown."

The petition alleges among other things that the relator herein is, and for many years has been, a citizen and resident of the city of Sheridan, in this state; that on October 7, 1921, relator was the wife of William S. McPherren who on said date was the duly appointed and acting undersheriff of Sheridan County, Wyoming; that on said date, acting in the course of his duty and under the instructions and orders of his superior, said W. S. McPherren participated in a raid upon and attempted the arrest of alleged and supposed violators of the prohibitory liquor act, and in so doing was shot and killed by a bullet wound; that relator was left destitute and wholly dependent upon the charity and assistance of relatives and friends for the support of herself and two small children, and ever since the death of her husband has been and is now poor. That the legislature at its session in 1923 passed Chapter 110 above set forth for the relief of relator; that relator thereafter presented her claim and demanded of the respondent to issue to her his warrant upon the State Treasurer for the sum of $3000.00, which he has refused to do, and relator asks that a writ of mandamus issue to compel him to do so. Respondent filed a demurrer to the petition on the ground that the petition

fails to state facts sufficient to constitute a cause of action. It is claimed that the legislative act above mentioned is unconstitutional upon three different grounds which we shall discuss separately.

1. It is claimed that to hold the act in question valid would be, in effect, to increase the salary of an officer in violation of our constitution. Section 30 of Article 3 of the constitution provides:

"No bill shall be passed giving any extra compensation to any public officer, servant or employe, agent or contractor, after services are rendered or contract made."

Section 32 of the same article provides:

"Except as otherwise provided in this constitution, no law shall extend the term of any public officer or increase or diminish his salary or emolument after his election or appointment."

In the case of Nichols v. State, 11 Tex. Civ. App. 327, 32 S. W. 452, the court construed a section of the Texas constitution similar to Section 30, supra, and the court said:

"That provision evidently means that when compensation is agreed upon or fixed for certain services, no extra compensation will be allowed for the same service. It was not intended to embrace claims that arose out of extra service. If extra service was rendered by virtue of proper authority, compensation could be made therefor."

The principle underlying this decision is, that no appropriation may be made as extra compensation after the performance of a duty to which a person was previously legally obligated, but unless such legal obligation in fact existed, extra compensation is not forbidden under the constitutional provision discussed in that case. Whatever legal duties are connected with an office must, no doubt, be performed for the emolument previously fixed. We need not define the precise limits of the field of legal duties. Prob-

ably they are somewhat uncertain and courts might differ in fixing them. But it is, we think, entirely clear that these limits do not extend so far as to require the officer to risk or give his life or incur permanent disablement. It is not reasonable to presume that the framers of the constitution had in mind that life or limb should be sacrificed for the comparatively small salaries usually fixed for officers. The duty to give life, to risk permanent disablement, does at times arise in the life of an officer, or employee of the state, as it arises, too, at times in the lives of private individuals. But when it does arise, it is something different from a mere legal duty. It rests upon a higher plane. It is bottomed on the sacrifice necessary at times to be made by individuals for the safety and happiness of human society, or a certain number thereof; and the need of this sacrifice is increased in the case of officers appointed to preserve peace and enforce the laws. It is a social and moral, not a legal duty, and compensation therefor is not, we think, to be considered as part of the salary of such officer, the increase of which is forbidden by the provisions of the constitution hereinbefore quoted. State v. Johnson, 170 Wis. 251, 256, 176 N. W. 222.

2. It is contended that the appropriation in question is a donation, and, therefore, contrary to the provisions of Section 6 of Article 16 of the Constitution, reading in part as follows:

"Neither the state nor any county * * * shall * * * make donations to or in aid of any individual * * * except for necessary support of the poor."

And contrary to Sec. 36 of Article 3, reading in part as follows:

"No appropriation shall be made for charitable, industrial, educational or benevolent purposes to any person, corporation or community not under the absolute control of the state."

We shall not enter upon a discussion of the question raised by relator as to what the legislature may or may not do by way of making an appropriation in favor of a person simply because he or she may be poor, except to say, that the constitutional provision that the legislature may appropriate money for the necessary support of the poor must necessarily be construed in the light of and in connection with the provision prohibiting the making of donations, and the latter provision could not be nullified by the simple claim that an appropriation is made pursuant to the former provision.  For the purposes of this case at least, we shall assume that if the appropriation in question is merely a gift or donation, it is void, not alone because it is expressly prohibited by the sections of the constitution referred to, but also because the purpose of such appropriation would then be private and not public, for it is elementary that the legislature cannot levy a tax or make an appropriation except only for public purposes, and this is true whether the constitution so expressly provides or not.  Gray, Limitations of Taxing Power, Sec. 169; 25 R. C. L. 398; Woodall v. Dorst, 71 W. Va. 350, 77 S. E. 264, 80 S. E. 367; 44 L. R. A. (N. S.) 83; Ann. Cas. 1914 B 1278.  If, on the other hand, the appropriation can be said to be in payment of a just claim against the state, then the purpose thereof would necessarily be public, would not constitute a donation, and could not be said to be given for a charitable purpose.  In a sense, of course, every payment not legally enforceable might be said to be a gift.  But courts have not, generally, construed that term as broadly as that.  A claim paid after it is barred by the statute of limitation is not considered a gift, but the recognition of a moral right, and when the existence thereof is acknowledged after the statute has run it may even be enforced in an action at law.  And it is generally held, that to be a claim which a state may recognize, it need not be such as is legally enforceable, but may be a moral claim, one based on equity and justice.  25 R. C. L. 402; 26 R. C. L. 65; Gray, supra, Sec. 326.

In the case of United States v. Realty Co., 163 U. S. 427, 41 L. Ed. 215, 16 Sup. Ct. Rep. 1120, the Supreme Court of the United States, in holding that Congress had full authority to pay money in recognition of a moral obligation, even though such obligation was founded on an unconstitutional statute, said:

"Under the provisions of the Constitution (Art. 1, Sec. 8) Congress has power to lay and collect taxes, etc. 'to pay the debts of the United States.' Having power to raise money for that purpose, it of course follows that it has power when the money is raised to appropriate it to the same object. What are the debts of the United States within the meaning of this constitutional provision? It is conceded, and indeed it cannot be questioned that the debts are not limited to those which are evidenced by some written obligation or to those which are otherwise of a strictly legal character. The term 'debts' includes those debts or claims which rest upon a merely equitable or honorable obligation, and which would not be recoverable in a court of law if existing against an individual. The nation, speaking broadly, owes a 'debt' to an individual when his claim grows out of general principles of right and justice; when, in other words, it is based upon considerations of a moral or merely honorary nature, such as are binding on the conscience or the honor of an individual, although the debt could obtain no recognition in a court of law."

The principle here mentioned had been laid down by courts for many years prior to the adoption of our Constitution. Town of Guilford v. Chenango County, 13 N. Y. 143, for instance, one of the leading and oft-quoted cases on the subject, was decided in 1855; Menges v. Wertman, 1 Pa. St. 218, in 1845; Lycoming v. Union, 13 Pa. St. 166, 53 Am. Dec. 575, in 1850; New Orleans v. Clark, 95 U. S. 644, 24 L. Ed. 521, in 1877. We think that our Constitution was adopted, and must be interpreted, in the light of this principle, which, except where contrary to a specific

provision in the Constitution, must be held to be in force in this state. We virtually recognized that fact in State v. Snyder (Wyo.) 212 Pac. 771, 782, where this court, speaking through Chief Justice Potter and referring to City of Richmond v. Pace, 127 Va. 274, 103 S. E. 647, said: ''The principle is well settled that the legislature can recognize claims founded in equity and justice in the largest sense of those terms.''

We have already seen that the appropriation in question cannot be considered in the light of an additional salary. Unless, therefore, it constituted a gift, the legislature had the right to make it. · It may not be always easy to determine when an obligation is on the one hand a moral one, which may be recognized, or when, on the other hand, it is a gift, or donation prohibited by the constitutional provisions above quoted. In attempting a definition of a moral claim, the Supreme Court of Illinois in the recent case of Hagler v. Small, 307 Ill. 460, 138 N. E. 849, said:

''It is of the essence of a moral obligation that it arise out of a state of facts appealing to a universal sense of justice and fairness, though upon such facts no legal claim can be based. The state may be said to owe a moral debt to an individual when his claim grows out of the principles of right and justice. When it is of such a nature as to be binding on the conscience or honor of an individual, it may be said to be based upon considerations of a moral or honorary nature of which the state may take cognizance. Payments to individuals in the nature of a gratuity yet having some features of a moral obligation to support them have been made by Congress since the foundation of the government,''

In the case of City of Lowell v. Oliver, 8 Allen 247, 257, quoted from with approval by the court in Gustafson v. Rhinow, 144 Minn. 415, 175 N. W. 903, it was said that there is no distinction between the right to raise money for a specific object yet to be accomplished and a right to raise

it to defray the expense of the same object after it has been attained, the court saying:

"If the object of the appropriation is a legitimate one, it is quite immaterial whether the money has been actually expended and the tax is laid to pay a debt previously incurred or for the reimbursement of sums advanced by third persons for a public object or whether it is to anticipate expenditures which the future requirements of the public service may render expedient or necessary. We can see no valid distinction in principle between a right to raise money for a specific object yet to be accomplished, and a right to raise it to defray the expense of the same object after it has been attained."

If this rule should hold universally true, it would furnish a reasonable standard of what is a moral obligation, for we should then but need to determine as to whether or not the legislature could have made an appropriation for the specific object before its accomplishment. The rule would not, however, hold true in this state at least in those classes of cases clearly involving the increase of salaries of officers. Still, as to whether or not the legislature could have made an appropriation in the first place, is at least one of the criteria by which we can judge whether or not an obligation is a moral one, for it is clear that no claims could be recognized or paid if an appropriation for such purpose could not have been made in the first place. We may, therefore, for a moment consider that viewpoint of the subject. It is clear that an appropriation like that involved in this case is analogous to payments made under workmen's compensation statutes. Laws of that kind are of comparatively recent origin but the idea is not at all new. As early as July 16, 1798 (Chap. 77, 1 Statutes at Large 606,) Congress provided for a seamen's fund, by a tax upon the seamen at the rate of forty cents per month, to be expended under the direction of the Secretary of the Treasury for the care and relief of the sick and disabled seamen.

See State ex rel v. Clausen, 65 Wash. 156, 117 Pac. 1101, 37
L. R. A. N. S. 466, 474. In 1880 England commenced to
modify her law as to liability for injuries of employes. The
first compensation law was adopted in Germany in 1884.
Australia followed in 1887, England in 1897, and about
that time, practically all of the countries in Europe and
the provinces of Canada enacted similar laws. The Federal
Employer's Liability Act was passed by Congress in 1908.
Massachusetts and nine other states enacted a workmen's
compensation act in 1911, and since that time similar legis-
lation has been adopted in all or nearly all of the other
states in the Union. Schneider's Workmen's Compensation
Acts, Sec. 2. Public conscience, therefore, the civilized
world over, has been decidedly changed in the last forty
years in its attitude toward those receiving injuries or sus-
taining death during the course of employment. Payment
under these acts is not considered in the light of a gift
made to the employee, but, on the contrary, is treated, par-
tially at least, as a recognition of a moral and an equitable
obligation, and the aim of these acts is the establishment of
natural and socal justice. Honnold, Workmen Compensa-
tion, Sec. 2 and cases cited. Lewis & Clark Co. v. Industrial
Board, 52 Mont. 6, 155 Pac. 268; L. R. A. 1916 D. 628;
Cunningham v. Northwestern Imp. Co., 44 Mont. 80, 119
Pac. 554; Borgnis v. Falk Co., 147 Wis. 327, 133 N. W. 209,
37 L. R. A. N. S. 489; New York Central R. R. Co. v.
White, 243 U. S. 188; 37 Sup. Ct. 247, 61 L. ed 667, L. R.
A. 1917 D. 1, Ann. Cas. 1917 D. 629; Mountain Timber Co.
v. State of Washington, 243 U. S. 219, 37 Sup. Ct. 260; 61
L. ed 685, Ann. Cas. 1917 D. .642; Hunter v. Colfax Cons.
Coal Co., 175 Iowa 245, 154 N. W. 1037, 1056, 157 N. W.
145, L. R. A. 1917 D. 15, Ann. Cas. 1917 E. 803. In the
case of State v. Clausen, supra, the court, speaking of the
principles underlying these acts, said in part:

"That the principle thus sought to be put into effect is
economically, sociologically, and morally sound, we think
must be conceded. It is so treated by the learned counsel

who have filed briefs in support of the auditor's contentions; it is so conceded by all the modern statesmen, jurists, and economic writers who have voiced their opinions on the subject and the principle has been enacted into law by nearly all of the civilized countries of Europe, by Australia, by New Zealand, by the Transvaal, by the principal provinces of Canada, and in a partial form, at least, by one or more of the South American republics. Indeed so universal is the conception that to assert to the contrary is to turn the face against the enlightened opinion of mankind."

Wyoming adopted a Workman's Compensation Law in 1915. That was done, it is true, after amending the Constitution (Sec. 4, Article 10). But that amendment was adopted pursuant to the general recognition that natural justice demanded legislation of that kind. Employees, engaged in certain extra hazardous work for the state, or any county or municipality, are protected under that law now, but a number of employes, including peace officers, do not come within its purview. It is clear, we think, that if the legislature should deem it advisable to extend the provisions of the act in question to those not now protected thereby, it would do so, at least partially, pursuant to the general recognition of justice toward and moral obligation owing to them. If that is true, and we think it is, then it goes far in showing, that an appropriation made to or on behalf of employes after death or injury is also in recognition of that same duty and obligation. The courts in fact that have had occasion to pass upon the question have generally so considered it. In Munro v. State, 223 N. Y. 208, 119 N. E. 445, it appears that the plaintiff was injured during the course of his employment by a patient in a state hospital, and the legislature authorized the allowance of a claim therefor. The court said in part:

"But the equity or justice of a claim which the state may recognize is not limited by any law that I can find to personal injuries arising out of negligence as defined in the

law at any given time. Negligence as a basis for liability, especially as applied to the relationship of master and servant, has been constantly changing and expanding under statutory enactments. Thus we have our employer's liability statutes, both state and federal, and at last the Workmen's Compensation Act making personal injury a risk of the business irrespective of negligence. Can it be that the legislature may place liability upon the employer irrespective of negligence, and that the state itself cannot recognize as a just and equitable obligation a personal injury received by one of its employes unless some legal principle the application of which has been abolished would have created liability in an individual or corporation? When a man gives his services or his property to the state under such circumstances that no liability would be created to pay therefor, even if the state were an individual or private corporation, the legislature may allow such a claim in good morals and fair dealings. (See cases cited above.) Why should there not be a like moral obligation to make some recompense to the man who in his work for the state by an unforseen accident has given his life or limb? The moral obligation may be as urgent in the one instance as the other.''

In the case of Babcock v. State, 190 App. Div. 147, 180 N. Y. S. 3; affirmed in 231 N. Y. 560, 132 N. E. 888, a highway engineer in the employ of the state made a survey on a mountain, and in order to reach a necessary point, fastened a rope to a tree and proceeded to lower himself thereby. The rope broke and he rolled down the mountain, receiving serious injuries. The legislature authorized the allowance of a claim therefor. The Supreme Court, relying on Munro v. State, supra, among other cases, said in part:

''The legislature, although it may not make a gift of the moneys of the state, nor itself audit or allow a private claim against the state, may yet recognize and legalize pri-

vate claims, which though unenforceable through the application of legal principles, are yet founded upon equity and justice, and it may empower the court of claims to audit and allow them. * * * If injuries, resulting from the hazards of caring for the insane furnished adequate grounds for legislative recognition of a claim against the state, then certainly the injuries of claimant, arising from the grave peril of descending a precipitous cliff upon a rope, under orders of a department of the state, furnished equally valid grounds for the passage of an act recognizing a claim of damages therefor.''

In the case of Mackey v. Reeves, 44 S. D. 153, 182 N. W. 700, it appears that the legislature by a special act appropriated money for plaintiff for injuries received by him while in the discharge of his duties as a militiaman of the state, the injury being received through an accidental and premature discharge of an artillery piece. The court upheld the appropriation as public and for a beneficial purpose, and not a gift within the meaning of the constitution prohibiting donations. In the case of Fairfield v. Huntington, 23 Ariz. 528, 205 Pac. 814, 22 A. L. R. 1438, it appears that plaintiff, while in the employ of the state engineer of Arizona, accidentally received an injury arising out of and in the course of his employment. The legislature of the state, by a special act, appropriated money to compensate him. Substantially the same contentions made in the case at bar were made in that case, under constitutional provisions similar to those in this state. The court held that the appropriation was not a gift, but the payment of a moral obligation, and after discussing the question as to whether a moral obligation existed, said in part:

''Indeed it would be difficult to imagine a case calling more strongly for the discharge of this duty than that of an employee of the state seriously injured or killed in its service without fault on his part, but for whose injury or death the state, by reason of its legislature's omission to enact

a law to that effect, cannot be compelled to make any recompense whatever. Under the same circumstances an individual or corporation would be legally liable. Why then, should the discharge by the state of such an obligation be regarded as a donation or as anything other than the payment of an honest debt, a thing that the state, as well as every good citizen should do?"

See also Woodall v. Darst, 71 W. Va. 350, 77 S. E. 264, 80 S. E. 367, 44 L. R. A. N. S. 83, Ann. Cas. 1914 B. 1278.

Another, but similar line of cases, too, sustain the legislative act in question here. These cases discussed the laws providing for a bonus for soldiers of the world war. The court of appeals of New York, in People v. Westchester National Bank, 231 N. Y. 465, 132 N. E. 241, 15 A. L. R. 1344, while adhering to the rule that the legislature may recognize a moral obligation, held, by a divided court, such a bonus to be a gift within the prohibition of the constitution of that state. But this holding was based on the theory that the soldiers were employed by the nation, and not by the state. Hence that case is not an authority against the validity of the legislative act in question here. All the other courts having occasion to pass upon a bonus law, have upheld it. State v. Clausen, 113 Wash. 570, 194 Pac. 793, 13 A. L. R. 580; Hagler v. Small, 307 Ill. 460, 138 N. E. 849; State v. Handlin, 38 S. D. 550, 162 N. W. 379; State v. Johnston, 170 Wis. 251, 176 N. W. 224; State v. Johnson, 170 Wis. 218, 175 N. W. 589; 7 A. L. R. 1617; Gustafson v. Rhinow, 144 Minn. 415, 175 N. W. 903. A similar law was upheld in Opinion of Justices, 211 Mass. 608, 98 N. E. 338. In the Washington and Illinois cases, the court specifically held that the payment of a bonus was in discharge of a moral obligation. In the South Dakota case, the bonus was held to be for a public purpose and that it was not to be considered as a gift. We see no distinction between the fundamental principle underlying these cases and that underlying the case at bar. The soldier who goes

to the field of battle, and the peace officer seeking to enforce the law, both act for the common weal and the safety of society. Protection from a foreign foe is of utmost importance, and our thanks are due to those who go forth to risk their lives in our behalf. But protection from within is of no less importance. Governments have rocked and fallen because of a lawless element in the community, and the civilization of nations has vanished, because this element of society obtained the upper hand. We are apt to overlook or undervalue the worth of the performance of humbler duties, but we do not read history aright; we glean from its pages no lesson, if we do not have indelibly imprinted on our mind the lesson, that strength without can only be met by strength from within; that seldom, if ever, have nations been conquered and ruined until the moral fibre of its people was undermined by the slow venom working within.

There is only one case condemning an appropriation such as was made in the case at bar. In Bourn v. Hart, 93 Cal. 321, 28 Pac. 951, 27 A. S. R. 203, 15 L. R. A. 431, a servant of the state had been injured and an appropriation made by the legislature was held to be a gift, prohibited by the constitution. Chief Justice Beatty dissented, saying:

"I dissent. In my opinion, the word 'gift' was not used in Section 31, Article 4, of the constitution in a sense broad enough to include compensation to a servant of the state for loss of life or limb in the discharge of his duties. Nor do I think such compensation is to be regarded as extra compensation for services, within the prohibition of the succeeding section of the same article."

It appears from Veterans Welfare Board v. Riley (Calf.) 206 Pac. 631, that the doctrine that moral obligations may be recognized, is not, in so far as these may grow out of service to the state, in force in California. The Bourn case was decided in 1892, before the validity of workmen's compensation acts had come to be generally recognized, and we

doubt seriously, had the case been decided in the light of the more recent opinions as to the validity of those acts, that the result would have been the same.  In Lewis v. State, 197 App. Div. 712, 189 N. Y. S. 560, the court held that if a member of a national guard receives injuries due solely to his own negligence, the legislature has no power to make compensation therefor.  We need not determine what the holding should be, if such a case should come before us. We cannot presume the existence of such negligence on the part of the officer here, in the absence of any showing there- of.  We must presume that the legislature investigated the facts leading up to the death of McPherren, and found them to be such as to warrant it in making the appropriation in question.  Woodall v. Darst, supra.

In view of the authorities we see but one conclusion. Law is a progressive science.  It is the beauty and boast of the common law, that it is able to adapt itself to the changing conditions and requirements of society.  Our constitution was adopted in the light of that fact.  It does not define a gift or donation; it does not by any express language prohibit the recognition of a moral claim or obligation, and in the light of the broader understanding of natural and social duties and of equity and justice in the larger sense of those terms, we think that the legislature was not unwarranted in recognizing that the death of McPherren, sustained while in the performance of his duty, gave rise to a moral obligation which it had the right to recognize by an appropriation of money.

3.  It is further contended that the legislative act in question is a special law in violation of Section 27 of Article 3 of the constitution.  That section, after enumerating certain definite subjects, not in question here, on which no special laws shall be enacted, provides that ''in all other cases where a general law can be made applicable no special law shall be enacted.''  It is the contention of the counsel for respondent that a general law could have readily been enacted in the case at bar.  The courts of many of the

states have adopted the rule that the legislature is the sole judge whether under a constitutional provision similar to that above quoted a general law is applicable under a given state of facts. 36 Cyc. 991. Some of the courts have held that the question is judicial. State v. Brock, 66 S. C. 357; 44 S. E. 931; Board of Com'rs. v. Hammerly, 85 Okla. 53, 204 Pac. 445. We need not determine as to what rule should be adopted in this state, except to say that in any event, unless it is clear that a general law could have been adopted, the court will not interfere with the legislative determination to the contrary. We have found no case which sustains the theory of respondent. On the contrary, the courts having had occasion to pass on the point, have upheld the power of the legislature to pass special laws in cases similar to that here. Mount v. State, 90 Ind. 29; 46 Am. Rep. 192; Merchants Co. v. Brown, 64 Iowa, 275, 20 N. W. 434; McSurely v. McGrew, 140 Iowa, 168, 132 A. S. R. 248, 118 N. W. 415; Sandall v. State, 115 S. C. 168; 104 S. E. 567; 13 A. S. R. 1268; Woodall v. Darst, supra; Fairfield v. Huntington, supra. Some of the courts take the view that an act such as in question here is in its very nature special.

In the case of Mount v. The State, supra, the court said:

"The granting of relief to individual claimants, is not within the provision of our constitution, which prohibits the enactment of special laws. Each claim stands on its own merits; a general law could not be made applicable, and when general laws are not applicable special ones may be enacted. * * * A law requiring reimbursement to an officer * * * is an act granting special relief in a particular case."

In the case of Merchants Co. v. Brown, supra, it appears that the legislature had appropriated $5000.00 to aid in the litigation of certain suits pending. The court speaking of the constitutional provisions similar to ours prohibiting special legislation in certain cases, said:

''We think the subject matter of the legislation in question is such that a general law cannot be made applicable. The act in question is what in legislative parlance is denominated an appropriation act. Such acts are in their very nature local and special, as distinguished from general law. There may be a question whether under the constitution there is any legislative power to make the appropriation, but it seems to us there can be no question, if an appropriation is authorized, or rather not forbidden, by the constitution, it must of necessity be made by a special act of the legislature.''

In McSurely v. McGrew, supra, the court said:

''Again it is argued that it confers a special benefit or immunity upon a particular individual, and is therefore invalid. This proposition is fully answered in State v. Squires, 26 Iowa 344. It is not to be assumed that there were other county treasurers in the same situation as McGrew. A general law could not, therefore, be made applicable, for the situation disclosed a novel and most unusual state of facts. The act in question is not bad because special in character. A law making an appropriation to a private individual or corporation, is not and cannot be made general, and yet it is good. Merchant's Co. v. Brown, 64 Iowa, 275, 20 N. W. 434.''

There is at least one fundamental and controlling reason why the act in question should not be condemned as unconstitutional, though special. The legislature has the right, as we have stated, to recognize a moral claim. It is not, however, compelled to do so. And if it acknowledges any one particular claim as just and equitable, we do not think that the court has the right to say that it must also recognize all other claims of a similar nature, and do so by passing a general law. The legislature might deem one claim as just and equitable because of the particular, peculiar incidents connected therewith, while another, similar claim, but

somewhat different in its aspects, might not be considered such as would, in its judgment, demand compensation.  As was said in Fairfield v. Huntington, supra:

"It would be difficult to enact a law applying to the various situations, under which the state's obligation might arise, and as said by the Supreme Court of West Virginia in Woodall v. Darst, 71 W. Va. 350, 44 L. R. A. N. S. 83, 77 S. E. 264; Ann. Cas. 1914 B 1278, above: 'There are many matters that might very justly and properly be considered by the legislature in determining the merits of claims of the same general nature as relator's which could not well be embodied in a general law.  For instance, the needs of the claimants and those dependent upon them might very properly influence the legislature in determining the amount it would apply to discharge an obligation purely moral.''

For the court to hold that a general law must be passed, if any, under which all claims of a general class of this kind could be presented and paid would, we think, unduly interfere with the legislative discretion to determine what is and what is not, in its judgment, a moral, just and equitable obligation which demands payment at its hands.  The legislature might hesitate, and refuse, to pass a general law of that kind, and to that extent change the general principle of non-liability of the state.  It may, however, be willing to give compensation in special cases, which demand special relief, and we are not warranted in holding that it cannot be permitted to do so in a case presenting facts like those in the case at bar.

The demurrer filed herein must accordingly be overruled, and an order to that effect will be entered.

POTTER, Ch. J., and KIMBALL, J., concur.

,NOTE—See under (1-2) Officers 29 Cyc. 1427; (3-7, 9) States 36 Cyc. 885, 894; (8) Statutes 36 Cyc. 1135.