## HUGHEY et al. *v.* BARROW.

A party cannot controvert the title of one under whom he claims.

Where a husband purchased, during the existence of the matrimonial community, a settlement right on the public lands of the United States, and after its dissolution the government made to him individually a donation of land on account of the settlement of the party from whom he purchased, the land, under the spanish law then in force in this State, did not inure to the benefit of the community, but belonged exclusively to the individual to whom it was given. Novis. Recop. b. tit. 4, l. 1. The rule that things given by the sovereign formed no part of the community, but belonged exclusively to the party to whom they were given, applied to all cases except where the donation was in remuneration for military services rendered to the sovereign by a husband, who had served without pay and been

supported by the community. Fuero Real, b. 3. tit. 3, l. 3. But tho right of the wife as to any improvements made on the property is distinct from her right to the property itself: the augmentation of value by the common labor alone makes a part of the acquests and gains. The facts that the improvements were not made by the spouses, but were purchased by them, does not affect the principle.

Purchasers of land from a party in whose favor a judgment had been rendered based on the admission of his title by the defendant, are not bound to enquire into the truth of the admission. It is sufficient for them, in a contest with the heirs of the party by whom the admission was made, that the admission is on the records of the court, and that a judgment had been rendered on it.

Under the stat. of the Legislative Council of 10 April, 1805, regulating the practice of the. late Supreme Court of the Territory, in all cases of liquidated accounts or demands, when no answer had been filed, the allegations in the petition were to be taken \pro confessis,. and the judgment rendered in consequence of the default of the defendant became final. after three days, in consequence of his negligence, without any agency of the court.

Sec. 12 of art. 4 of the constitution of 1812, and sec. 70 of the constitution of 1845, which require the judges of all courts, as often as it may be possible to do so, in every definitive judgment, to refer to the particular law in virtue of which such judgment may have been. rendered, and in all cases to adduce the reasons on which their judgment is founded, does. not apply to an order making final a judgment by default.

A certificate of the auditor of public accounts that, "upon examining the tax-roll for the parish of T. for the year——, there appeared to be assessed thereon, in the name and as the property of A. H., five hundred acres of land," is inadmissible in evidence; though proof had been previously made that the original tax-roll, which was required by law to be deposited in the office of the parish judge, could not be found there. The certificate disclosing the existence of a copy of the tax-roll in the possession of the auditor, an extract from that copy, properly certified, is alone admissible.

The certificate of a mere matter of fact by a public officer is inadmissible. If he was bound to record the fact, a copy of the record, duly authenticated, is the proper evidence. As to matters which he was not bound to record, his certificate is merely the statement of a private person, and therefore inadmissible.

In sales for taxes the assessment stands in lieu of the judgment in ordinary judicial sales, and the party relying on a sale of that description is bound to show its existence and legality. Want of proof of a proper assessment and of a sufficient description of the land, where no actual possession has followed, are not defects that can be cured by the prescription of five years, under the stat. of 10 March, 1834, s. 4.

The purchase without warranty, by third person, of the right, title and interest of a party in a tract of land bought by him at a public sale for taxes, but of which he never had possession, cannot form the basis of prescription. The second purchaser was apprized of the nature of his title, and that it was defective.

APPEAL from the District Court of West Feliciana, *Penn*, J. *Ratliff* and B. A. *Crawford*, for the appellants. *Huason*, *Petterson* and *Brewer*, for the defendant. The judgment of the court (*King*, J. absent,) was pronounced by

ROST, J. This is a petitory action. The plaintiffs, as legitimate decendants and forced heirs of *Andrew* and *Mary Hughey*, deceased, claim six hundred and forty acres of land in possession of the defendant, and alleged to have formed part of the community which existed between the said *Andrew* and *Mary*. The defendant, and the warrantors made parties to the suit, do not seriously contest the heirship of the plaintiffs, but they deny the title alleged, and aver that, if it ever existed, it was not in the community, but in *Andrew Hughey* alone, who has since been legally divested of it in the following manner: 1st. By a judgment in favor of *John W. Hall* against him, for two hundred and forty arpents thereof. 2d. By a sheriff's sale, of three hundred and sixty acres of the land, made on the 2d day of June, 1824, under a twelve months' bond, given by him in satisfaction of a judgment obtained against him by *W. Wood*, on the 9th of October, 1821. 3d. By a tax-sale made on the 3d June, 1824, by the tax-collector, of five hundred

32

HUGHEY
*v.*
BARROW.

acres of land in the parish of Feliciana, fronting on the Mississippi, and belonging to *Hughey*. The defendant claims title under these partial alienations. He further avers that no proceedings were ever had in the successions of *Andrew* and *Mary Hughey* ; that *Andrew* died in 1824 or 1825, and *Mary* in 1819, and that, since their death, their successions have been *hæreditates jacentes*. He pleads the prescription of five years against informalities in judicial sales, under the act of 1834 ; the prescription of ten years against vacant successions; and the prescriptions of ten and twenty years under just titles, and open, peaceable, and uninterrupted possession. There was judgment in his favor in the first instance, and the plaintiffs appealed.

I. The first question which we will consider is, whether the plaintiffs have made out a title in the community or in *Andrew Hughey*. They have shown a probate sale of the succession of *Joshua Barker*, dated the 9th of March, 1816, and pending the marriage, showing the adjudication to *Hughey* of three hundred acres of the land in controversy, more or less, this being at the time a mere settlement right. The defendant objected to the introduction of this evidence on various grounds, which were overruled by the court, and we think properly overruled. The defendant, claiming under *Hughey*, cannot controvert his title. *Crane et al.* v *Marshall*, 1 Mart. N. S. 578. *Verret's Heirs* v. *Candolle,* 4 Mart. N. S. 402. *Bedford* v. *Urquhart et al.* 8 La. 237.

This purchase was made during the existence of the marriage, and, after its dissolution, to wit, on the 8th May, 1822, the United States made to *Hughey* individually a donation of six hundred and forty acres of land, upon the original settlement of *Joshua Barker*. The plaintiffs contend that, the rights of *Barker* having been acquired by the community, the subsequent donation to *Hughey* must enure to its benefit. The donation was made at a time when the laws of Spain were still in force in Louisiana. Those laws provide that: Toda cosa que el marido y muger ganaren ó compraren, estando de consuno, háyanlo ambos por medio; y si fuere donadio de Rey ó de otri, y lo diese á ambos, háyanlo marido y muger; y si lo diere al uno, háyalo solo aquel á quien lo diere." Nov. Recop. lib. 10, tit. 4, law 1. This law expressly ordains that things given by the sovereign shall not be common to the husband and wife, but shall belong exclusively to the individual to whom the king gives them.

This question first came before the Supreme Court in the case of *Gayoso v. Garcia*, 1 Mart. N. S. 334, and was decided against the community. This decision was maintained in the cases of *Rouquier* v. *Rouquier*, 5 Martin N. S. 98, and *Frique* v. *Hopkins et al.* 4 Ib. N. S. 212. In the last case, the court went into an elaborate examination of the laws of Spain on this subject, and we have no doubt of the correctness of the opinion to which they came ; and the rule applies to all cases coming within its letter, except those where the king gave in remuneration of military services rendered to him by the husband, when he served without pay and was supported at the expense of the community. Fuero Real b. 3, tit. 3, law 3. Febrero, p. 1, c. 1, par. 22, no 239. In the same case the court held, on the authority of Febrero, that the right of the wife in ameliorations made on the property, is quite distinct from her right to the property, and that the augmentation of value, given by the common labor, alone made a part of the acquests and gains. The distinction attempted to be drawn, that the improvements in this case were not made by the husband and wife but were purchased by them, does not appear to us to affect the principle. The land was given without any price paid for it, and not in renumeration of any services rendered, and the consideration which may have induced the donation, or the fact that the

cost of the improvement right was paid by the community, cannot change the character and legal effect of the grant. We have no hesitation in saying that, the land did not enter into the community.

II. The plaintiffs contend that the judgment in favor of *Hall* cannot prejudice them : 1st. Because the indentity of the land is not shown. 2d. Because the title of *Hall* is alleged to be derived from *Lardois* and *Andrew Robertson*, and, as no title or confirmation is shown in these parties, the confession of *Hughey* that they had a title is not binding upon them. The land claimed by *Hall* is described in the petition as having six arpents front on the Mississippi river opposite the mouth of Red river, and then in possession of the defendant, by his tenant. The defendant compromised this suit, and, in execution of the compromise, made the judicial admission of the existence of the plaintiff's title upon which the judgment is based. We are of opinion that the evidence of the identity of the land is, *primâ facie*, sufficient, and that the plaintiffs are estopped by the judicial admission of *Hughey* that the title was in *John W. Hall*. Purchasers under *Hall* were not bound to enquire into the truth of that admission. It was enough for them that it stood on the records of the court, and that a judgment had been rendered upon it. 1 Greenleaf, Evid. no. 27. 2 Annual, 446. 8 La. 422.

III. It is next urged that the sheriff's sale in the suit of *Wood* v. *Hughey* conveys none of the land in controversy, and that there is no legal evidence in the record establishing the boundaries, or the identity, of the land conveyed ; that the judgment upon its face is unconstitutional, and can have no binding effect upon any one ; and that the forms of law were not complied with, in the execution of said judgment. The land in the sheriff's deed is described as fronting on the Mississippi river, bounded east by lands of *McMasters* and west by lands of *Andrew Hughey*, and containing three hundred and sixty acres. The testimony of *Purvis* shows that *McMasters* lived half, or three-quarters, of a mile above the ferry-house opposite the mouth of Red river. This testimony, it is true, does not fix with precision the line of *McMasters*, but it shows that the land sold was the eastern portion of the tract, and the line may easily be ascertained by reference to the survey and location made by the United States.

The judgment in that case is in these words : " A judgment by default having been rendered in this case, it is, therefore, ordered that judgment be rendered for the plaintiff for $596 40¼, with eight per cent interest from 31st January, 1821, till paid, and costs of suit." It is urged that the plaintiff did not prove his demand ; that the judgment does not show that three judicial days elapsed after the default, and does not contain the reasons upon which it is founded, as required by the constitution of 1812.

Under the act of the Legislative Council passed, in 1805, regulating the practice of the late Superior Court, and still in force when *Wood* instituted his suit, in all cases of liquidated accounts or demands, when no answer was filed, the allegations in the petition were to be taken *pro confessis*, and the judgment, rendered in consequence of the default of the defendant, became final after three days, in consequence of his negligence and sufferance, without any agency of the court. It has been repeatedly held that reasons need not be assigned in a judgment, which becomes final by lapse of time and operation of law on a judgment by default. *Allard* v. *Ganucheau*, 4 Mart. 662. *Babin et al.* v. *Winchester*, 7 La. 460. The informalities alleged after the judgment need not be noticed in detail, as it is evident that they are all covered by the prescription of ve years, under the act of 1834.

HUGHEY
v.
BARROW.

The sale by the tax collector conveys a certain tract or parcel of land, assessed in the name of *Andrew Hughey*, lying in the parish of West Feliciana, containing five hundred acres, sold to pay the state and parish tax due on it by *Hughey* for the year 1822, amounting to $12 75, and the costs and charges amounting to $5. In support of this sale, the defendant offered in evidence a certificate of the auditor of public accounts, which is in these words : "This is to certify that, upon examining the tax roll for the parish of Feliciana for the year 1822, there appears to be assessed thereon in the name, and as the property of *Andrew Hughey*, five hundred acres of land, represented as being on the Mississippi river." The plaintiff objected to the introduction of this certificate in evidence, on the ground that it is not an original, nor the certified copy of an original, but a mere certificate of the auditor, who is not shown to be the keeper of the tax rolls ; and further that it contains no description of the land pretended to be assessed.

We are of opinion that this exception should have been sustained. It is true the defendant proved that the original tax-roll, which the law requires to be deposited in the office of the parish judge, is not found there ; but the certificate adduced discloses the existence of a copy of it in the possession of the auditor, and an extract from this copy properly certified, was the only admissible evidence. The law never allows the certificate of a mere matter of fact, given by a public officer, to be admitted as evidence. If he was bound to record the fact, the proper evidence is a copy of the record duly authenticated ; and as to matters which he was not bound to record, his certificate is merely the statement of a private person, and, therefore, inadmissible. 1 Greenleaf, Evid. nos. 498, 509.

If this certificate had been properly in evidence, the description of five hundred acres of land on the Mississippi river, unsupported as it is by proof of possession, under the sheriff's sale, or by any other evidence going to show its identity with the land claimed, is too indefinite to pass the title. The want of proof of a proper assessment and of a sufficient description of the land, where no actual possession has followed, are not defects that can be cured by the prescription of five years, under the act of 1834. In sales for taxes the assessment stands in lieu of the judgment in ordinary judicial sales, and the party relying upon a sale of that description is bound to show its existence and legality. *Nancarrow* v. *Weathersby*, 6 Mart. N. S. 348. 7 La. 50. 10 La. 283.

It is unnecessary to determine whether this sale would be sufficient to support the plea of prescription, as no possession has been shown under it.

On the 16th June, 1824, seven days after the date of this sale, *Bouis*, the purchaser, sold to *Sterling*, without warranty, *his right, title and interest* in and to a certain tract of land exposed to public sale for taxes, and purchased by him. It does not appear that *Sterling* ever took actual possession, and, in 1834, he sold, also without warranty, to *Harmanson*, making an express reference to the act of sale from *Bouis* to him. This last sale, which embraces several titles, does not, on the face of it, purport to be a sale of land, but merely of *claims to land*, and the purchaser binds himself to incur all the expenses attending the prosecution of those claims. Under the deeds from *Bouis* to *Sterling*, and from *Sterling* to *Harmanson*, the purchaser was apprized of the nature of his title and that it was defective. Titles of this kind cannot form the basis of prescription. 4 Mart. N. S. 213, 222. 5 La. 240, 247. 3 Rob. 220. 4 Martin, 436. 10 Rob. 80.

This action was commenced in 1842, and the defendant cannot have prescribed under conveyances subsequent in date to those already noticed.

We are of opinion that, after deducting from the six hundred and forty acres granted to *Andrew Hughey* by the United States, the 240 arpents recovered by *John W. Hall*, and the three hundred and sixty acres sold at the suit of *William Wood* v. *Andrew Hughey*, the plaintiffs are entitled to recover the remainder; and that, in order to ascertain the boundaries between them and the defendant, and all matters relating to the rents and improvements and the liability of the warrantors, the case must be remanded.

It is, therefore, ordered that, the judgment in this case be reversed. It is further ordered that, the defendant be forever quieted in his possession and title, against all claims and pretensions of the plaintiffs, to the two hundred and forty arpents of land recovered by *John W. Hall* from *Andrew Hughey*, being six arpents front by forty deep, opposite the mouth of Red river, and including the house built by *Joshua Barker;* and also to the three hundred and sixty acres of land sold at the suit of *William Wood* v. *Andrew Hughey*, to be taken adjoining to the eastern line of the tract of six hundred and forty arpents confirmed by the United States to *Andrew Hughey*, under certificate no. 252, in pursuance of the act of Congress passed on the 8th May, 1822, entitled, an act supplementary to the several acts for adjusting claims to land and establishing land offices in the districts east of the island of New Orleans. It is further ordered that, the plaintiffs recover from the defendant the remainder of the aforesaid six hundred and forty acres, and that the case be remanded for the purpose of ascertaining the boundaries between them and the defendant, and all matters relating to rents and improvements, and to the liability of the warrantors. It is further ordered that the costs in both courts thus far incurred be paid by the defendant.