91 So.2d 574

**SUCCESSION OF Lloyd SCOTT.**

No. 42586.

Nov. 5, 1956.

Rehearing Denied Dec. 10, 1956.

Joseph W. Starring, Baton Rouge, for plaintiff-appellant.

Ralph L. Ray, Baton Rouge, in pro. per.

Alex L. Pitcher, Jr., Baton Rouge, Van B. Lacour, Baton Rouge, of counsel, for defendants-appellees.

HAMITER, Justice.

Maggie Smith Scott, widow of Lloyd Scott, deceased, filed a petition in this succession proceeding praying for a judgment decreeing her to be the owner of the entire estate left by the decedent (as his surviving widow in community and sole heir) and ordering that she be sent into possession of it. Made defendants were the decedent's collateral heirs.

The district court denied the demands of plaintiff, exceptions of no right and no cause of action having been sustained, and she is appealing.

According to the petition, the documents annexed thereto, and a stipulation of counsel, which are to be considered in passing upon the exceptions, the marriage of plaintiff and Lloyd Scott was celebrated February 17, 1912, and it continued until dissolved by the latter's death on November 19, 1954. He died intestate, was survived by neither ascendants nor descendants, and left property having a total value of $9223.33.

The estate of the decedent, who for many years prior to his death was a judicially

declared incompetent represented by a curator, consisted entirely of cash and United States bonds. These assets were an accumulation of payments to him by the Federal Government, made over a period of years because of a disability he sustained during his marriage and as a result of service with the United States Armed Forces, and were received while married to plaintiff and their community of acquets and gains was intact.

The position of the defendants under the sustained exceptions of no right and no cause of action is, to quote from the brief of their counsel, that "Disability pensions paid by the Federal Government pursuant to the World War Veterans' Act are gratuities which constitute separate property of the veteran, and at his death are inherited by the veteran's brothers and sisters or their representatives to the exclusion of the surviving widow of the veteran."

Plaintiff, on the other hand, maintains "that the compensation herein received by and for the decedent, Lloyd Scott, was not a pure gift, gratuity or donation, but rather was for a disability to himself and necessarily to his community partnership, that hence said property was community property and that under LSA–Civil Code, Article 915, his surviving widow, Maggie Smith Scott should inherit same to the exclusion of the collateral heirs."

Thus, the single question to be determined here is whether the disability payments made to Scott by the Federal Government constituted pure gratuities. If the answer be in the affirmative the disputed assets were his separate property; if otherwise they belonged to the community of acquets and gains that formerly existed between him and his surviving wife. See LSA–Civil Code Article 2334.

The specific issue under consideration is res nova in the Louisiana jurisprudence, and insofar as we have been able to ascertain it has not been resolved by a court of last resort in any other jurisdiction. However, lending aid in solving the instant problem are many reported cases in which payments of public funds (not veterans' disability benefits) to private persons were challenged on the ground that they constituted pure gratuities and hence were illegal.

Veterans' bonus payments, unconnected with disability, were involved in some of the cases. As to whether they were purely gratuitous a conflict among the authorities exists.

In the leading case of United States v. Realty Co., 163 U.S. 427, 16 S.Ct. 1120, 1125, 41 L.Ed. 215, the United States Supreme Court recognized the right of the Federal Government to appropriate funds based on moral obligations and held that the appropriations were not invalid as being a pure "bounty". The payments of

public funds therein were to sugar manufacturers who had complied with certain requirements. In reaching its conclusion the court observed: "We are of the opinion that the parties, situated as were the plaintiffs in these actions, acquired claims upon the government of an equitable, moral, or honorary nature. * * * They are asserting that, by reason of the occurrences which took place before the appropriation * * * they were so placed before congress as to authorize that body to recognize the equities of the situation, and to pay their claims, which, while they were not of a legal character, were nevertheless of so meritorious and equitable a nature as to authorize the nation, through its congress, to appropriate money to pay them.

*     *     *     *     *     *

"Under the provisions of the constitution (article 1, § 8), congress has power to lay and collect taxes, etc., 'to pay the debts' of the United States. * * * The term 'debts' includes those debts or claims which rest upon a merely equitable or honorary obligation, and which would not be recoverable in a court of law if existing against an individual. The nation, speaking broadly, owes a 'debt' to an individual when his claim grows out of general principles of right and justice, when, in other words, it is based upon considerations of a moral or merely honorary nature, such as are binding on the conscience or the honor of an individual, although the debt could

obtain no recognition in a court of law. * * * Payments to individuals, not of right, or of a merely legal claim, but payments in the nature of a gratuity, yet having some feature of moral obligation to support them, have been made by the government, by virtue of acts of congress, appropriating the public money, ever since its foundation. * * *"

The Realty Co. decision was cited and quoted from approvingly in State ex rel. McPherren v. Carter, 30 Wyo. 22, 215 P. 477, 479, 28 A.L.R. 1089, which resolved a contest over an appropriation for the widow of a police officer killed in the line of duty, the appropriating statute having been attacked on the ground that the Constitution forbad donations of public funds to individuals. In maintaining the validity of the act, and relying on numerous decisions from other jurisdictions (in addition to the Realty Co. case), the court said: "* * * For the purposes of this case, at least, we shall assume that, if the appropriation in question is merely a gift or donation, it is void, * * *. If, on the other hand, the appropriation can be said to be in payment of a just claim against the state, then the purpose thereof would necessarily be public, would not constitute a donation, and could not be said to be given for a charitable purpose. In a sense, of course, every payment not legally enforceable might be said to be a gift. But courts have not, generally, construed that

term as broadly as that. A claim paid after it is barred by the statute of limitation is not considered a gift, but the recognition of a moral right, * * *. And it is generally held that, to be a claim which a state may recognize, it need not be such as is legally enforceable, but may be a moral claim, one based on equity and justice. * * *"

Citing the McPherren case the Alabama Supreme Court, in Board of Revenue and Road Commissioners of Mobile County v. Puckett, 227 Ala. 374, 149 So. 850, 851, stated: "We have fallen in line with other courts, without exception, so far as we know, which hold that it is not a mere donation for the Legislature to make an appropriation for a member of the State Militia injured in the line of his duty. * . * * Some courts have gone further, and held, with none to the contrary, that an appropriation for the relief of the widow of a public officer killed in the performance of his duty is not within the operation of constitutional provisions prohibiting donations in aid of an individual. * * *"

In the Louisiana jurisprudence is Kroncke v. Caddo Parish School Board, La. App., 183 So. 86, a suit by an injured public employee for compensation under the Louisiana Employers' Liability Act, LSA-R.S. 23:1021 et seq. Resisting plaintiff's demands the defendant pleaded the unconstitutionality of the act, one of the grounds being that the application of the statute to public employees amounted to a diversion of public funds to a private use. In holding the plea to be without merit the Court of Appeal of the Second Circuit cited numerous decisions from other jurisdictions and quoted the following extract from Lewis & Clark County v. Industrial Accident Board, 1916, 52 Mont. 6, 155 P. 268, 270, L.R.A.1916D, 628: "If the compensation to be paid to an employé injured in the service of the county is to be treated as charity under an assumed name, then it might be conceded that this measure conflicts with the provisions of section 1, art. 13, of the Constitution; but that is not the conception of compensation statutes."

The court refused to grant a writ of certiorari to review the decision in the Kroncke case.

With further reference to claims by public employees under Workmen's Compensation statutes the following was said in the McPherren case, supra [30 Wyo. 22, 215 P. 481]: "* * * Public conscience, therefore, the civilized world over, has been decidedly changed in the last 40 years in its attitude toward those receiving injuries or sustaining death during the course of employment. Payment under these acts is not considered in the light of a gift made to the employee but, on the contrary, is treated, partially, at least, as a recognition of a moral and an equitable

obligation, and the aim of these acts is the establishment of natural and social justice. * * *"

Specifically referring to veterans' disability pensions the following is found in 6 C.J.S., verbo Army and Navy, § 60: "Following the World War provision was made by the federal government for relief of persons disabled in the military service, and the legislation on this subject was codified, revised, and reenacted by the World War Veterans' Act of June, 1924, which is to be construed liberally in favor of the veteran. In addition to federal legislation the various states have enacted laws designed to relieve disabled or indigent veterans and their families, and the relief so provided is not to be regarded as charity, but as a recognition of an obligation owing to those falling within the law for services rendered in defense of the nation."

■ We are of the opinion that the disability payments made to the decedent in this cause, pursuant to the provisions of the World War Veterans' Act, 1924, 38 U.S.C.A. § 421 et seq., are not to be considered as purely gratuitous and that, therefore, they constituted assets of the community that formerly existed between him and his wife. A casual reading of the statute will reveal that its purpose was the establishment of natural and social justice, and that the benefits provided for therein were and are in recognition of an

equitable obligation on the part of the United States Government to aid in the support of disabled veterans or their dependents—a debt owed by the nation as a whole to those persons who lost all or a part of their earning capacities in an effort resulting in the common good of all.

■ It is true that the disabled veteran favored by the mentioned statute, like the injured public employee under an employers' liability act, has no vested right to the disability benefits therein provided; in fact, the law under which he is compensated can be repealed by the legislative branch of the government at any time. But that circumstance alone, as is disclosed by the jurisprudence above discussed, does not render the making of the payments a donation, pure and simple, or mere charity.

Incidentally, the debt of the Federal Government to disabled veterans, of which recognition has been given by the Congress and for the discharge of which arrangements have been made, might well be considered under the civil law as being a natural obligation. Thus, according to the LSA–Civil Code:

"* * * A natural obligation is one which can not be enforced by action, but which is binding on the party who makes it, in conscience and according to natural justice." LSA–Civil Code Article 1757.

"* * * When the action is barred by prescription, a natural obligation still sub-

sists, although the civil obligation is extinguished." LSA–Civil Code Article 1758.

" * * * No suit will lie to recover what has been paid, or given in compliance with a natural obligation.

"A natural obligation is a sufficient consideration for a new contract." LSA–Civil Code Article 1759.

The decisions from federal courts cited by defense counsel in their brief, Lynch v. United States, 292 U.S. 571, 54 S.Ct. 840, 78 L.Ed. 1434 and Slocumb v. Gray, 86 U. S.App.D.C. 5, 179 F.2d 31, are inapposite. True, therein, as counsel point out, veterans' pensions were termed "gratuities"; but that term was used only in the sense that the grant of the benefits created no vested rights.

Likewise cited by counsel and distinguishable from this case are Hughey v. Barrow, 4 La.Ann. 248, Howard v. Ingle, La.App., 180 So. 248, Brownfield v. Southern Amusement Co., Inc., 196 La. 73, 198 So. 656, and State ex rel. Fields v. Rapides Parish School Board, 227 La. 290, 79 So.2d 312. In the first two cases the grants involved were not provided for or made during the existence of the community. In the last two decisions the court was primarily dealing with the right of a wife to bring suit and stand in judgment under certain special statutes.

For the reasons assigned the judgment of the district court is reversed and set aside, the exceptions of no right and no cause of action are now overruled, and the cause is remanded for further proceedings consistent with the views hereinabove expressed. The cost of this appeal is to be paid by appellees, and all other costs are to await final determination of the litigation.

FOURNET, C. J., absent.