520 So.2d 435 (1987)
Lillian Slay RUSSELL, Plaintiff-Appellant,
v.
Gerald L. RUSSELL, Defendant-Appellee.
No. 87-53.
Court of Appeal of Louisiana, Third Circuit.
December 9, 1987.
Broussard, Bolton & Halcomb, Roy S. Halcomb, Jr., Alexandria, for plaintiff-appellant.
Eugene P. Cicardo, Alexandria, for defendant-appellee.
Before DOMENGEAUX, GUIDRY and LABORDE, JJ.
DOMENGEAUX, Judge.
Plaintiff, Lillian Slay Russell filed suit against her former husband, defendant, Gerald L. Russell, seeking a community property interest in certain military disability retirement benefits being paid to defendant. From a final judgment holding *436 these benefits to be defendant's separate property, and in addition, reducing plaintiff's alimony amount, plaintiff has appealed.
Two issues are presented for our review.
(1) Whether the contested military benefits were retirement benefits, thus susceptible to community property division or whether they were disability benefits, thus defendant's separate property.
(2) Whether or not the trial court erred in determining that there was a change in circumstances sufficient to warrant a reduction in plaintiff's alimony.

FACTS
On January 31, 1955, defendant, Gerald Russell entered the U.S. Army. He married plaintiff, Lillian Slay Russell on October 5, 1958. On September 21, 1972, defendant retired from the Army after being credited with serving 19 years, 11 months and 5 days. Mr. Russell would have been eligible to retire after completing twenty years, but instead, he chose to retire under 10 U.S.C. § 1201 because he had been determined to be 30% permanently disabled. Payments entitled "military retirement disability benefits" commenced on January 1, 1977.
After nineteen years of marriage, plaintiff and defendant were divorced on June 1, 1978. For fourteen of these years defendant had been in the Army and had accrued time towards retirement benefits. A community property agreement signed by both parties after the divorce made no reference to the military disability retirement benefits.
In 1983, Mrs. Russell sued Mr. Russell for her community interest in these payments. Initially, she claimed that military disability retirement benefits are community property just like other retirement benefits and therefore, subject to community partition. Alternatively, she argued that even if military disability retirement benefits are not community property, the payments defendant is receiving are not, in fact, disability benefits but instead, are a combination of both disability and retirement benefits, the latter of which are community assets. Defendant contested plaintiff's claim by arguing that these payments were disability benefits and, by law, were his separate property.
Defendant moved for summary judgment which was granted. In ruling for the defendant, the trial court held that the benefits defendant was receiving were solely for disability and, by law, could not be subject to community property partition.
Earlier in these proceedings, we reviewed the correctness of the summary judgment granted by the trial court. See Russell v. Russell, 465 So.2d 181 (La.App. 3rd Cir.1985). In that opinion we discussed other Circuit Court decisions which involved military disability retirement benefits, including Inzinna v. Inzinna, 456 So. 2d 691 (La.App. 5th Cir.), writ denied, 461 So.2d 317 (La.1984). We concluded that "disability retirement pay, although nominally a disability pension, can be a community asset if and to the extent that some amount thereof reflects nondisability retirement credible service." at 465 So.2d 183. We then set aside the judgment and remanded the case for a further determination of exactly what type of pension defendant was receiving; specifically, whether or not it represented a calculable combination of both disability and nondisability benefits.
After a trial on the merits, the trial court again concluded that the payments were solely disability benefits and therefore, constituted defendant's separate property. The Court also ruled that there was a significant enough change in circumstances to warrant lowering plaintiff's alimony from $200.00 to $100.00 a month because the plaintiff was now gainfully employed. Plaintiff has appealed the correctness of both rulings by the trial court.

THE MILITARY PENSION BENEFITS
Plaintiff argues that the trial judge erred in holding that disability benefits, as a matter of law, are a spouse's separate property and therefore, cannot belong to the community. Alternatively, plaintiff argues that even if the Court was correct in holding *437 that disability benefits are, by law, separate property, in this case, defendant failed to prove that these payments were, in fact, disability benefits. Plaintiff argues that these benefits are actually a combination of both disability and retirement benefits, the latter of which are subject to community partition under Louisiana law.
Initially, under Louisiana law military retirement benefits acquired during the existence of the community were considered community property and were subject to partition. Swope v. Mitchell, 324 So.2d 461 (La.App. 3rd Cir.1975); Moon v. Moon, 345 So.2d 168 (La.App. 3rd Cir.); writ denied, 347 So.2d 250 (La.1977). Louisiana jurisprudence seldom considered the issue of whether or not disability retirement pensions would also be considered community property. However, in Succession of Scott, 231 La. 381, 91 So.2d 574 (1956), the Court classified a disability retirement pension as a community asset. It was therefore, subject to a claim by the surviving widow. Thus, under Louisiana law both disability and non-disability retirement benefits had been treated as community assets subject to partition.
In McCarty v. McCarty, 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981), the United States Supreme Court held that federal law preempted the application of state law in the area of military retirement benefits. The Court further ruled that military retirement benefits were the separate property of the retiring spouse.
The following year Congress enacted the "Uniformed Services Former Spouses Protection Act", which legislatively overruled McCarty, supra. Subsequently codified in Title 10 of the United States Code, the key provision removing federal preemption in the area of military retirement benefits can be found in 10 U.S.C. § 1408(c)(1) which provides that:
"Subject to the limitations of this section, a court may treat disposable retired or retainer pay payable to a member for pay periods beginning after June 25, 1981 [the decision date of McCarty, supra], either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court."
Thus, military retirement benefits, termed "disposable retired or retainer pay" in 10 U.S.C. § 1408(c)(1) were again subject to the application of state community property laws.
However, the original definition of "disposable retired or retainer pay" in 10 U.S. C. § 1408(a)(4) read as follows:
"The total monthly retired or retainer pay to which a member is entitled (other than the retired pay of a member retired for disability under Chapter 61 of this title [10 U.S.C. §§ 1201 et seq.])..." (emphasis added).
The apparent exclusion of disability retirement pay from the definition of "disposable retired or retainer pay" led to conflicting interpretations by our Circuit Courts on whether or not state courts were free to apply state laws to military disability retirement benefits.
In Campbell v. Campbell, 474 So.2d 1339 (La.App. 2nd Cir.) writ denied, 478 So.2d 148 (La.1985), the Second Circuit concluded that federal law does not preempt state law in the area of Veterans Administration disability retirement benefits. This holding was based on the Court's interpretation that it was Congress' intent, through the use of such specific language, to only overrule the holding of McCarty. Since McCarty addressed only non-disability retirement benefits, the Court concluded that the language used in 10 U.S.C. § 1408(a)(4) was aimed only to overrule McCarty, and did not intend to create an area of federal preemption in regard to military disability retirement benefits.
In Inzinna, supra, and in our prior opinion in this case, both the Fifth Circuit and this Circuit concluded that the language in 10 U.S.C. § 1408(a)(4) does create an area of federal preemption regarding military disability retirement benefits. Consequently, payments that compensate a retiring member for a disability are the member's separate property. We remanded this case for a further determination of what percentage of Mr. Russell's payments *438 are for his disability and what percentage, if any, are for his retirement, only the latter of which is subject to community division.
In 1986, Congress amended 10 U.S.C. § 1408(a)(4) to read as follows:
"Disposable retired or retainer pay" means the total monthly retired or retainer pay to which a member is entitled less amounts which
. . . . .
(E) in the case of a member entitled to retired pay under chapter 61 of this title [10 USC §§ 1201 et seq.], are equal to the amount of retired pay of the member under that chapter computed using the percentage of the member's disability on the date when the member was retired (or the date on which the member's name was placed on the temporary disability retiredlist);
. . . . .
(As amended Nov. 14, 1986, P.L. 99-661, Div. A, Title VI, Part D, § 644(a), 100 Stat. 3887.) (emphasis added).
The new definition of disposable retired or retainer pay clearly indicates that Congress intended to exclude from disposable retired or retainer pay those benefits that are paid as compensation for a member's disability. Therefore, we hold that all past, present and future benefits paid to Mr. Russell that are compensation for his disability are his separate property and are not subject to community division. However, any amounts paid in excess of his disability compensation would be part of the disposable retired or retainer pay. Thus, this excess amount would be subject to a community property claim by Mrs. Russell for the fourteen years she and defendant were married while defendant was enlisted in the Army.
After reviewing the evidence presented at trial, the trial judge ruled that the entire amount paid to Mr. Russell was given for his disability and therefore, was his separate property. Plaintiff-wife argues that under La.C.C. art. 2340, assets acquired during the existence of the community are presumed to be community assets. Since the right to the contested benefits vested during the existence of the community, plaintiff contends that these benefits are presumed to be community assets, i.e., retirement benefits. Plaintiff argues that defendant presented insufficient evidence to establish that these benefits were disability compensation in order to rebut the presumption that they were retirement benefits.
While it is difficult from the evidence to accurately characterize the benefits, it appears that the trial judge erred in holding that the entire amount paid to defendant was for disability compensation. The evidence showed that from January 1, 1977, until January 31, 1985, Mr. Russell received $55,557.69 in total benefits (plaintiff's exhibit No. 9). Of this gross amount, the Army considered $18,115.09 to be taxable income. Military disability retirement pay is exempt from taxation if it is received for personal injuries or sickness resulting from active service in the Armed Forces. 10 U.S.C. § 1403; 26 U.S.C. § 104(a)(4), Internal Revenue Code of 1986. Therefore, because part of the payments defendant received were treated as taxable income by the federal government, it is unlikely that the entire amount paid to defendant consisted of disability retirement pay.
As defendant's payments appear to include money in addition to his disability benefits and since the apparent excess amount would be subject to Mrs. Russell's community property claim, in order to ascertain exactly what benefits defendant is receiving, it is necessary to determine the method the Army used to calculate defendant's benefits. Presumably, defendant's benefits were based on 10 U.S.C. § 1401(a) which provides two optional methods of calculation.[1] Under the first *439 method, defendant was eligible to receive 2½% of 20 years of service multiplied by his retired base pay. This would have resulted in defendant receiving 50% of his final monthly basic pay. Alternatively, defendant could have received his retired base pay multiplied by his percentage of disability. As defendant was 30% disabled, under the second method of calculation, he would have received 30% of his final monthly basic pay. Therefore, depending on the method used, defendant has been receiving either 50% or 30% of his final basic pay.
The evidence does not show which method the Army used to calculate defendant's benefits; nor does the evidence show whether defendant is receiving 50% or 30% of his basic pay. However, if defendant is receiving 50% of his basic pay, under the new definition of disposable retired or retainer pay in 10 U.S.C. § 1408(a)(4)(E), the amount paid which exceeds 30% of defendant's final basic pay, (the amount he is entitled to as disability compensation) would clearly be part of the disposable retired or retainer pay. Therefore, this excess amount would be subject to partition under Louisiana community property law. If defendant is receiving only 30% of his final basic pay, this would be disability compensation, and hence, defendant's separate property.
Thus, it is necessary to again remand this case for determination of exactly how the Army calculated defendant's retirement disability benefits. Specifically, it is necessary to learn whether defendant is receiving 50% or 30% of his final basic pay. If defendant is receiving 50% of his final basic pay, Mrs. Russell has a community interest in that portion which exceeds 30% of defendant's final basic pay. Because a 50% rate of retirement pay would be calculated on defendant's 20 years of service, Mrs. Russell's community interest in the excess amount would be limited to the fourteen years that she and defendant were married while he was in the service. If defendant is receiving only 30% of his final basic pay, this is his separate property and not susceptible to a claim by Mrs. Russell. Inasmuch as the record is devoid of the Army's method of calculation of defendant's retirement disability benefits, we are unable to determine what benefits defendant is receiving. We must therefore again remand this case for further evidence concerning the method of calculation.

REDUCTION OF ALIMONY
Mrs. Russell also appeals the trial judge's ruling reducing her alimony from $200.00 a month to $100.00 a month.
When the parties were divorced in 1978, Mrs. Russell was unemployed. Presently, Mrs. Russell is gainfully employed, earning a net income of $668.98 per month. Mrs. Russell's present employment was the primary reason the trial judge reduced the alimony amount. Plaintiff argues that this alone was insufficient to warrant the reduction.
La.C.C. art. 160 outlines the guidelines a court must consider in awarding alimony after divorce. Paragraph A(4) of this article provides:
"Permanent periodic alimony shall be revoked if it becomes unnecessary and terminates if the spouse to whom it has been awarded remarries or enters into open concubinage." (Emphasis added).
For a court to alter an alimony award, including one established by a consent judgment, the party seeking modification must show a change in circumstances of either party from the time of the award to the time of the trial of the alimony rule. Bernhardt v. Bernhardt, 283 So.2d 226 (La.1973); Cromwell v. Cromwell, 419 So. 2d 974 (La.App. 3rd Cir.1982); Romero v. Romero, 463 So.2d 768 (La.App. 3rd Cir.), writ denied, 465 So.2d 735 (La.1985).
Under article 160, a spouse may be awarded alimony only if he or she proves they do not have sufficient means of support. In determining the needs of the claimant spouse the reasonable cost of food, clothing, shelter, utilities, transportation, medical care, and household expenses are considered as well as tax liability generated by alimony payments. Green v. Green, 432 So.2d 959 (La.App. 4th Cir. *440 1983). Much discretion is vested in the trial court in determining the amount of alimony. In the absence of a clear showing of an abuse of discretion, the amount set by the trial judge will not be disturbed on appeal. Vesper v. Vesper, 469 So.2d 458 (La.App. 3rd Cir.1985).
Defendant in Rule exhibit No. 1, showed Mrs. Russell's monthly expenses to be $1,042.45. Of this amount, Mrs. Russell spent $270.00 a month on food for herself and for her three major children still residing with her. The needs of major children should have no influence in determining a spouse's need for alimony. Green, supra. Since the food expenses of major children should not have been included in the list of Mrs. Russell's expenses, we will conclude that food expenses for Mrs. Russell alone equaled ¼th of the listed amount, i.e., $67.50 a month. Therefore, Mrs. Russell's actual total monthly expenses are $839.95.
In his reasons for judgment, the trial court found that Mrs. Russell had earned additional income through sales of Avon products and had netted the following amounts: $354.23 in 1983, $1,496.90 in 1984, and $354.26 in 1985. The trial judge concluded that based on the additional income presently being earned by Mrs. Russell, Mr. Russell had shown sufficient change in circumstances to warrant a reduction in alimony. We do not find this ruling to be an abuse of his discretion. We therefore affirm the trial court's ruling reducing Mrs. Russell's alimony from $200.00 to $100.00 per month.
For the above and foregoing reasons this case is remanded for a determination of whether defendant has been receiving 50% or 30% of his final basic pay. Once this has been determined, the trial court is ordered to render judgment consistent with the views expressed herein.
Costs on appeal are assessed one-half each to appellant and appellee.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
NOTES
[1] This court has assumed that defendant's benefits were calculated under one of the two methods provided in 10 U.S.C. § 1401(a). If the Army has used another method to calculate defendant's benefits, the trial court is ordered to consider any amount received by the defendant that is equivalent to 30% of his final basic pay to be defendant's separate property. Any benefits defendant received that would be greater than 30% of defendant's final basic pay are susceptible to defendant's community property claim.