[L.A. No. 31191. July 17, 1980.]

In re the Marriage of MARY LEE and HARRY LLOYD MILHAN.
MARY LEE MILHAN, Appellant, v.
HARRY LLOYD MILHAN, Appellant.

COUNSEL

Cavalletto, Webster, Mullen & McCaughey and Jeffrey C. Nelson for Appellant Wife.

Gertrude D. Chern as Amicus Curiae on behalf of Appellant Wife.

Price, Postel & Parma, Gary R. Ricks and J. Terry Schwartz for Appellant Husband.

Allen R. McMahon and Loretta H. Hellen as Amici Curiae on behalf of Appellant Husband.

OPINION

BIRD, C. J.—The principal issue in this dissolution action is whether the Supreme Court in *Hisquierdo* v. *Hisquierdo* (1979) 439 U.S. 572 [59 L.Ed.2d 1, 99 S.Ct. 802], implicitly held that community property states could not apply their laws in dividing as part of the community a husband's military pension, insurance policy, and disability pay which he received in lieu of retirement.

I

Following his graduation from the United States Naval Academy in 1944, Mr. Milhan married Mrs. Milhan. The Milhans' marriage was dissolved in 1970, five years after Mr. Milhan retired from the Navy and began receiving retirement pay. In 1972, Mr. Milhan was awarded as separate property his retirement pension and two military insurance policies which had been purchased with community funds.

This court reversed that judgment in *In re Marriage of Milhan* (1974) 13 Cal.3d 129 [117 Cal.Rptr. 809, 528 P.2d 1145], certiorari denied (1975) 421 U.S. 976 [44 L.Ed.2d 467, 95 S.Ct. 1976]. (*Milhan I.*) Relying on *In re Marriage of Fithian* (1974) 10 Cal.3d 592 [111 Cal.Rptr. 369, 517 P.2d 449], certiorari denied (1974) 419 U.S. 825 [42 L.Ed.2d 48, 95 S.Ct. 41], this court held that Congress had not preempted the application of California community property law to federal

military pensions. The court also rejected the claim that *Wissner* v. *Wissner* (1950) 338 U.S. 655 [94 L.Ed. 424, 70 S.Ct. 398] required California to classify military insurance policies as separate property. A federal interest was recognized in protecting a serviceman's right to specify the beneficiary of a military insurance policy. However, California courts could nonetheless evaluate "the community interest in a military life policy and award [] the insured's spouse an equivalent amount in *other* property available for disposition. [Fn. omitted.]" (*Milhan I, supra*, 13 Cal.3d at p. 133.)

This court issued its remittitur, and a hearing was held by the trial court. Mr. Milhan testified that he had elected to receive $106 disability compensation from the Veterans' Administration in lieu of an equal amount of retirement pay. The trial court awarded Mrs. Milhan half of Mr. Milhan's retirement pay, as well as a sum equivalent to half of the cash surrender value of the military insurance policies at the time of trial. Mrs. Milhan was also awarded restitution for one-half of the retirement pay received by Mr. Milhan after May 2, 1972.[1] Mr. Milhan's Veterans' Administration disability pay was not included in the judgment.

Relying on the post-*Milhan I* decision in *Hisquierdo* v. *Hisquierdo, supra*, 439 U.S. 572,[2] Mr. Milhan appealed contending that the award to Mrs. Milhan of pension funds and of property equivalent to her community property interest in the military insurance policies was error. He also claimed the court erred when it awarded interest and attorneys' fees and refused certain credits against the award of back pay.[3] Mrs. Milhan cross-appealed, attacking the trial court's failure to award her a community property share in the Veterans' Administration disability

---

[1]The trial court awarded Mrs. Milhan the legal rate of interest on her half of the retirement pay due on and after May 2, 1972, as well as on the amount due in lieu of her share in the insurance policies. The trial court provided that the interest would be computed from the date on which this court's remittitur was filed. Mr. Milhan was allowed to make monthly payments totalling $300 in lieu of lump sum restitution of retirement benefits received between May 2, 1972, and February 1976, and in lieu of immediate payment of half of the cash surrender value of the insurance policies. Mrs. Milhan was awarded attorneys' fees of $1,500.

[2]The Supreme Court reversed the decision of this court in *In re Marriage of Hisquierdo* (1977) 19 Cal.3d 613 [139 Cal.Rptr. 590, 566 P.2d 224], and remanded the case for further proceedings not inconsistent with its opinion.

[3]In addition, Mr. Milhan argued that the trial court erred in failing to make any provision regarding his obligations with respect to the military retirement pay if Mrs. Milhan should predecease him. However, California law is clear that "the heirs of the

pay received by Mr. Milhan in lieu of retirement pay, and the court's failure to divide the retirement pay from the date of trial in 1970.[4]

## II

In *Hisquierdo* v. *Hisquierdo, supra*, 439 U.S. 572, the Supreme Court considered whether the supremacy clause[5] precludes state courts from applying community property law to pensions payable under the federal Railroad Retirement Act of 1974. (45 U.S.C. § 231 et seq.) The court found that benefits under the act were provided to "support... [former] employees[] [in their] old age and to encourage... employee[s] to retire." (*Hisquierdo, supra*, 439 U.S. at p. 585 [59 L.Ed.2d at p. 13].) Application of state community property law, the court reasoned, would frustrate the congressional objective in two ways. First, the reduction of benefits would *discourage* the employee from retiring. Second, state law would *encourage* divorced employees to "keep working, because [their] former spouse[s] [have] no community property claim to salary earned after the marital community is dissolved." (*Ibid.*) Accordingly, the court held that 45 United States Code section 231m precludes both the division of railroad pensions as community property and the award of an equivalent amount of other property to the nonemployee spouse.[6]

---

ex-wife are not entitled to the portion of the retirement benefits the ex-wife would have received had she lived." (*In re Marriage of Fithian, supra*, 10 Cal.3d at p. 601.) There was no need for the trial court to restate this principle in the judgment.

[4]Mrs. Milhan's contention that the decision in *Milhan I* is the final law of the case is incorrect inasmuch as *Hisquierdo* was decided while the appeal herein was pending. (See *Subsequent Injuries Fund* v. *Ind. Acc. Com.* (1960) 53 Cal.2d 392, 395 [348 P.2d 193].)

[5]"This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." (U.S. Const., art. VI, cl. 2.)

[6]The Railroad Retirement Act provides a separate benefit to nonemployee spouses which is terminated upon dissolution of the marriage. (45 U.S.C. § 231d(c)(3).) The court found this termination to manifest a "deliberate" congressional choice to exclude nonemployee spouses from any community property claim to the pension provided employees. (*Hisquierdo, supra*, 439 U.S. at p. 585 [59 L.Ed.2d at p. 13]. See discussion *infra*, pp. 774-775.)

The broad language of 45 United States Code section 231m protects this congressional allocation of benefits: "Notwithstanding any other law of the United States, or of any State, territory, or the District of Columbia, no annuity or supplemental annuity

■ The Supreme Court has long recognized that the "'whole subject of the domestic relations of husband and wife...belongs to the laws of the States and not to the laws of the United States.'" (*Hisquierdo, supra*, 439 U.S. at p. 581 [59 L.Ed.2d at pp. 10-11] (citation omitted); see also Reppy, *Community and Separate Interests in Pensions and Social Security Benefits After Marriage of Brown and ERISA* (1978) 25 UCLA L.Rev. 417, 483-485.) Accordingly, federal preemption will apply only where "'positively required by direct enactment'" (*Hisquierdo, supra*, 439 U.S. at p. 581 [59 L.Ed.2d at p. 11], citation omitted), and only insofar as necessary to protect specific federal interests. "State family and family-property law must do 'major damage' to 'clear and substantial' federal interests before the Supremacy Clause will demand that state law be overridden." (*Id.* Citation omitted.) "The pertinent questions are whether the right as asserted conflicts with the express terms of federal law and whether its consequences sufficiently injure the objectives of the federal program to require nonrecognition." (*Hisquierdo, supra*, 439 U.S. at p. 583 [59 L.Ed.2d at p. 12].)

Mr. Milhan contends that *Hisquierdo, supra*, 439 U.S. 572, governs the assets divided by the trial court in this case. ■ Specifically, he claims that neither military retirement pay nor disability pay received in lieu thereof may be divided as community property. Further, California courts may not award an equivalent amount from other property to compensate for a community property interest in military insurance policies. In effect, Mr. Milhan contends that *Hisquierdo* implicitly disapproved this court's holdings in *In re Marriage of Fithian, supra*, 10 Cal.3d 592,[7] *In re Marriage of Stenquist* (1978) 21 Cal.3d 779 [148 Cal.Rptr. 9, 582 P.2d 96], and *Milhan I, supra*, 13 Cal.3d 129. However, the principles which required preemption in *Hisquierdo* yield a different result when applied to the facts of this case.

In *Fithian*, this court found that "California community property law [does not] interfere[] in any way with the administration or goals of the federal military retirement pay system...." (*Fithian, supra*, 10 Cal.3d at p. 604.) Accordingly, the court held that state law was not preempt-

---

shall be assignable or be subject to any tax or to garnishment, attachment, or other legal process under any circumstances whatsoever, nor shall the payment thereof be anticipated...."

[7]Citing *Gorman* v. *Gorman* (1979) 90 Cal.App.3d 454 [153 Cal.Rptr. 479], this court indicated in *Henn* v. *Henn* (1980) 26 Cal.3d 323, at page 328, footnote 3 [161 Cal.Rptr. 502, 605 P.2d 10], that *Hisquierdo* does "not compel reconsideration of our holding in *Fithian*...." However, the issue was not briefed by the parties in *Henn*, and the court's reasons for so holding have not been fully explained.

ed. Nothing in *Hisquierdo* conflicts with this conclusion. Military retirement pay was enacted, inter alia, to "provide [servicemen] with an incentive to *remain* in the armed services...." (*Id.*, at p. 599. Italics added.) The federal interest which required preemption in *Hisquierdo* —an incentive for pension holders to retire—does not exist in the military retirement system.[8]

*Hisquierdo* is also consistent with this court's conclusion in *Fithian* that Congress did not intend "to preserve the benefits of the [military retirement] system as the separate property of the recipient." (*Fithian, supra*, 10 Cal.3d at p. 599.) The Supreme Court's finding of congressional intent to preempt community property laws applicable to railroad retirement pensions rested on two principal grounds. Neither applies to military pensions.

First, *Hisquierdo* relied on the statutory immunity of railroad pensions from taxation, attachment, garnishment, assignment, and other "legal process." (45 U.S.C. § 231m.) This statute also prohibits the "anticipation" of railroad pension benefits. (*Id.*) Counsel have not cited, nor has independent research revealed, any federal statute which similarly shields military pensions. Thus, Congress has not "'positively'" and "'by direct enactment'" precluded California courts from applying community property rules to such pensions. (*Hisquierdo, supra*, 439 U.S. at p. 581 [59 L.Ed.2d at p. 11], quoting *Wetmore* v. *Markoe* (1904) 196 U.S. 68, 77 [49 L.Ed. 390, 394, 25 S.Ct. 172].)[9]

---

[8]Mr. Milhan repeats many of the arguments rejected in *Fithian*. For example, he contends that application of state community property principles to military pensions is inconsistent with the right of servicemen to designate a beneficiary to receive pay arrearages or other amounts due on their death in settlement of their accounts. (10 U.S.C. § 2771.) Further, he argues that California law interferes with the right of servicemen to use a portion of their pay to purchase annuities payable on their death to beneficiaries including persons other than a spouse. (10 U.S.C. § 1431 et seq. [Retired Serviceman's Family Protection Plan]; 10 U.S.C. § 1447 et seq. [Survivor Benefit Plan].) Since *Hisquierdo* sheds no new light on these contentions, there is no need to supplement the discussion in *Fithian*.

Mr. Milhan also contends that the decision of the United States Court of Appeals in *Costello* v. *United States* (9th Cir. 1978) 587 F.2d 424, established that military retirement benefits are paid in consideration of continued services to the military establishment. *Costello* held that retired military personnel have no vested right to retired compensation at the rate in effect on the date of their retirement. This holding rested principally upon the finding that military retirement pay is not received entirely for past services. However, the issue in *Costello* was far removed from the problem of classifying retirement benefits under state community property law, and is not authoritative on the latter issue. (See *Fithian, supra*, 10 Cal.3d at p. 603.)

[9]10 United States Code section 1440 applies only to annuities payable under the Retired Serviceman's Family Protection Plan. (10 U.S.C. § 1431 et seq.) It is not .

Second, *Hisquierdo* relied on the provision of a separate benefit for spouses which is terminated on dissolution of marriage. (45 U.S.C. § 231d(c)(3).) The court stated: "Congress carefully targeted the benefits created by the Railroad Retirement Act. It even embodied a community concept to an extent. The Act provides a benefit for a spouse, but the spouse need not have worked for a carrier. The spouse's sole contribution is to the marital community that supports the employee who has made railroad employment a career. Congress purposefully abandoned that theory, however, in allocating benefits upon absolute divorce. In direct language the spouse is cut off. . . ." (*Hisquierdo, supra,* 439 U.S. at p. 584 [59 L.Ed.2d at p. 13].) The court further emphasized that "[d]ifferent considerations might well apply where Congress has remained silent on the subject of benefits for spouses, particularly when the pension program is a private one which federal law merely regulates." (*Id.,* at p. 590, fn. 24 [59 L.Ed.2d at p. 16].)

It is irrelevant that the military retirement scheme is a public program. The scheme does not contain a separate spousal benefit which is purposefully cut off upon dissolution. Instead, the scheme contains two different annuity plans, the Retired Serviceman's Family Protection Plan (10 U.S.C. § 1431 et seq.), and the Survivor Benefit Plan (10 U.S.C. § 1447 et seq.). The serviceman may elect not to participate in either plan. (10 U.S.C. §§ 1431(b), 1448(a).) Both plans allow the serviceman to designate the surviving children as the beneficiaries, instead

---

applicable to Mr. Milhan's Navy retirement pay. (Accord *Czarnecki v. Czarnecki* (1979) 123 Ariz. 466 [600 P.2d 1098]; *In re Marriage of Musser* (1979) 70 Ill.App.3d 706 [388 N.E.2d 1289].) Since military retirement pensions are not administered by the Veterans' Administration, they are also outside the scope of 38 United States Code section 3101. Mr. Milhan cites only four other provisions. 37 United States Code section 701(a) and (b) allows Army and Air Force officers and certain contract surgeons to assign their pay pursuant to appropriate regulations, while section 701(c) forbids enlisted personnel from these services from doing so. 31 United States Code section 203 applies only to the transfer and assignment of claims against the United States.

Mr. Milhan forcefully contends that a congressional intent to preempt state community property law applicable to military retirement pay is established by two recent amendments to the Social Security Act, codified at 42 United States Code sections 659 and 662(c). These amendments apply to 45 United States Code section 231m and "similar provisions in all other federal benefit plans." (*Hisquierdo, supra,* 439 U.S. at p. 576 [59 L.Ed.2d at p. 7].) The amendments create an exception for child support and alimony claims, with "alimony" defined to explicitly exclude community property claims. However, since military retirement pay is not shielded by any statute similar to 45 United States Code section 231m, the scope of the exception created by these amendments, and the policy implications, if any, to be drawn are not material to this case.

of the spouse.[10] (10 U.S.C. §§ 1434(a), 1450(a).) Unlike the railroad retirement scheme, these annuities are not payable until the serviceman's death. Nor is a surviving spouse's annuity absolutely cut off even upon remarriage. The spouse may continue receiving an annuity if the remarriage occurs after the spouse reaches age 60. (10 U.S.C. §§ 1434(a), 1450(b).) If a remarriage entered into prior to age 60 is dissolved, the spouse may resume receiving an annuity due under the Survivor Benefit Plan. (10 U.S.C. § 1450(b).)

Both the structure and the legislative history of the annuity plans available for military spouses indicate that they were designed to alleviate hardship caused by the serviceman's death. (See 1972 U.S. Code Cong. & Admin. News, at pp. 3288-3328.) Thus in contrast to the Railroad Retirement System, Congress did not enact a spousal benefit designed to reflect the contribution of military spouses to the marital community. Accordingly, there is no basis for inferring a congressional intent to cut off the California community property rights of military spouses. As stated in *Fithian, supra*, 10 Cal.3d at page 600, "Congress' concern for the welfare of soldiers' widows sheds little light on Congress' attitude toward the community treatment of retirement benefits, particularly since those benefits do not survive the serviceman regardless of his marital status at death."

The Veterans' Administration disability pay which was received in lieu of retirement pay presents a different issue. Disabled servicemen have two options under 10 United States Code section 1401, which governs the computation of retirement pay for all of the armed services. First, retirement pay may be computed solely on the basis of rank and length of service. Under *Fithian*, all of this amount is community property to the extent earned by service during marriage. Second, retirement pay may be computed by multiplying basic pay times the percentage of disability before retirement. *In re Marriage of Stenquist, supra*, 21 Cal.3d 779, held that selection of the "disability" computation does not defeat the community interest in the amount of retirement pay that would have been due based on rank and length of service. Only the

---

[10]An unmarried serviceman with no dependent children may designate any natural person with an insurable interest in him as the beneficiary under the Survivor Benefit Plan. (10 U.S.C. §§ 1450(a)(4), 1448(b).) Mr. Milhan allots $7.66 out of each retirement paycheck towards the purchase of an annuity payable to his surviving children until they reach 18 years of age. As of the postremittitur hearing, only one child remained eligible to receive this benefit. Mrs. Milhan has not been designated as a beneficiary.

excess of the "disability" pension over the latter amount was held to be separate property.[11]

■ Mr. Milhan opted to receive a pension administered by the Veterans' Administration. This pension is computed solely on the basis of his disability. (See 38 U.S.C. §§ 314, 334.) In order to receive this benefit, Mr. Milhan waived his right to an equivalent amount of retirement pay. (38 U.S.C. § 3105.) The reasoning of *Stenquist* applies with equal force to this situation and to title 10 disability benefits. However classified for administrative purposes, disability benefits under *Stenquist* are separate property in California only insofar as they exceed the amount of retirement pay waived. Significantly, Mr. Milhan does not appear to contest this proposition. Instead, he contends that under *Hisquierdo* the rule in *Stenquist* violates the supremacy clause of the United States Constitution.

This contention lacks merit. Insofar as disability benefits replace retirement pay waived as a condition of receipt, they perform the same functions as retirement pay. (*Stenquist, supra*, 21 Cal.3d at p. 787.) Since the division of military retirement pay as community property does not violate federal supremacy, it follows that no substantial federal interest is damaged by the division of "disability" benefits which serve identical purposes.

Mr. Milhan's attempt to avoid state law by citing the "spendthrift" provision the Veterans' Administration applies to the benefits it administers would substitute a "conflict in words" for the practical clash of interests which the Supreme Court has required for preemption.[12] (*His-*

---

[11]The court reasoned that a spouse should not be allowed to defeat the community interest by invoking a condition solely within his or her control. Moreover, the court recognized that as a practical matter only the excess over straight retirement pay is attributable to the disability: "'It would be unjust to deprive wife of a valuable property right simply because a misleading label has been affixed to husband's pension fund benefits.'" (*Stenquist, supra*, 21 Cal.3d at pp. 786-787. Citation omitted.)

[12]"Payments of benefits due or to become due under any law administered by the Veterans' Administration shall not be assignable except to the extent specifically authorized by law, and such payments made to, or on account of, a beneficiary shall be exempt from taxation, shall be exempt from the claim of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary...." (38 U.S.C. § 3101(a).)

Significantly, this provision does not apply to disability benefits distributed as retirement pay under title 10 of the United States Code, since these benefits are not administered by the Veterans' Administration. This limited scope militates against a

*quierdo, supra*, 439 U.S. at p. 581 [59 L.Ed.2d at pp. 10-11].) ■ Where a practical understanding of state and federal objectives demonstrates that both may be fully achieved, comity precludes the preemption of state law based only on semantic inconsistencies. (Cf. *Merrill, Lynch, Pierce, Fenner & Smith v. Ware* (1973) 414 U.S. 117 [38 L.Ed.2d 348, 94 S.Ct. 383]; *Huron Cement Co. v. Detroit* (1960) 362 U.S. 440 [4 L.Ed.2d 852, 80 S.Ct. 813, 78 A.L.R.2d 1294].)

■ Next, Mr. Milhan contends that under *Hisquierdo* federal supremacy precludes an award to Mrs. Milhan of property equivalent to her community interest in the military insurance policies. He argues that 38 United States Code section 3101(a) is analogous to the statute in *Hisquierdo* which precluded the assertion of state community property claims against railroad pensions.[13] However, section 3101(a) applies only to the "[p]ayments of benefits due" under laws administered by the Veterans' Administration. While this language shields insurance policy proceeds paid to the *named beneficiary*, it does not extend any protection to the *insured* as such. So long as there is no interference with the beneficiary's exclusive enjoyment of the proceeds, section 3101(a) poses no bar to any state claim.

The limited scope of section 3101(a) highlights a more fundamental distinction between *Hisquierdo* and this case. *Hisquierdo* disapproved the award of other property to compensate spouses for their community property interest in railroad pensions. The court stated this would "impair [railroad pensioners'] economic security just as surely as would a regular deduction from [their] benefit check."[14] (*Hisquierdo, supra*, 439 U.S. at p. 588 [59 L.Ed.2d at p. 15].) However, there is no corresponding federal interest in securing Mr. Milhan's economic stake in the military insurance policies. Rather, the United States Supreme Court has determined that the pertinent federal objective is to secure

---

finding that section 3101(a) manifests a congressional intent to preempt application of state community property claims to all payments classified as "disability" benefits by federal statutes.

[13]*Ante*, page 776, footnote 12.

Mr. Milhan cites former section 454a in 38 United States Code, which has been repealed. 38 United States Code section 3101(a) is the analogue to the former section 454a.

[14]The court also relied on the prohibition against "anticipation" of railroad pension benefits which is contained in 45 United States Code section 231m. (*Hisquierdo, supra*, 439 U.S. at pp. 588-589 [59 L.Ed.2d at pp. 14-16].) No such prohibition appears in 38 United States Code section 3101(a). (*Ante*, p. 771, fn. 6.)

the policyholder's choice as to who will receive the proceeds of the policies. (*Wissner* v. *Wissner, supra*, 338 U.S. at pp. 658-659 [94 L.Ed at pp. 428-429].)

This objective was not blunted when Mrs. Milhan was awarded a sum equivalent to her share of the cash surrender value of the insurance policies. Payment of such a sum by Mr. Milhan would allow him to "retain both policies in force, along with the right to change the beneficiaries thereunder." (*Milhan I, supra*, 13 Cal.3d at p. 133.) Moreover, the beneficiary designated by Mr. Milhan would receive the full benefit of the policy. Under these circumstances, the suggestion that *Hisquierdo* forbade the grant of an offsetting award to Mrs. Milhan ignores the admonition that "'major damage'" to "'clear and substantial'" federal interests is necessary before the supremacy clause will override state law. (*Hisquierdo, supra*, 439 U.S. at p. 581 [59 L.Ed.2d at p. 11]. Citation omitted.)

### III

Mr. Milhan asserts three additional errors in the judgment. First, he contends that the trial court abused its discretion in refusing to credit certain payments against the award of back retirement pay. (See *Schubert* v. *Bates* (1947) 30 Cal.2d 785, 789 [185 P.2d 793].) ■ However, setoff is not ordinarily available where restitution of property awarded under a judgment subsequently reversed is sought by motion, rather than in an independent action. (See *Buckman* v. *Tucker* (1937) 9 Cal.2d 403, 406 [71 P.2d 69].) Though restitution may be denied where necessary to avoid inequity (see *Schubert* v. *Bates, supra*, 30 Cal.2d at p. 791; *Palpar, Inc.* v. *Thayer* (1949) 91 Cal.App.2d 176, 178 [204 P.2d 654]), the record does not show that the trial court abused its discretion in granting restitution in this case.

It was not for the trial court to attempt to compensate Mr. Milhan for an alleged overpayment of taxes on his mistaken assumption that all of his retirement pay was separate property. Nor was Mr. Milhan entitled to reimbursement for the amounts he paid toward the childrens' college expenses, since he testified that he did not expect repayment. Mr. Milhan's modest monthly payments on the annuity he purchased for his surviving children were also gifts, and similarly failed to give rise to any legal debt on the part of Mrs. Milhan.

■ Next, Mr. Milhan contends that the trial court erred in awarding interest from the date on which this court's remittitur was filed, January 16, 1975, rather than the date on which the present judgment was entered, March 7, 1978. When a judgment is reversed on appeal, a new award subsequently entered by the trial court can bear interest only from the date of the new judgment. (*Snapp* v. *State Farm Fire & Cas. Co.* (1964) 60 Cal.2d 816, 819 [36 Cal.Rptr. 612, 388 P.2d 884].) However, the remittitur in this case in effect ordered the trial court to enter judgment in Mrs. Milhan's favor on the contested items of property. The filing of this remittitur in accordance with Code of Civil Procedure section 912, fully defined and protected the rights of the parties. (See *Hampton* v. *Superior Court* (1952) 38 Cal.2d 652, 654 [242 P.2d 1].) The trial court had only to apply equitable principles governing the *enforcement* of these rights. Accordingly, the filing of ·the remittitur constituted the entry of judgment for purposes of determining the date from which interest may run. (Cf. *Allen* v. *Paradise Grange No. 490, Inc.* (1959) 176 Cal.App.2d 227 [1 Cal.Rptr. 220].)

■ Finally, Mr. Milhan contends that the trial court erred in awarding Mrs. Milhan $1,500 attorneys' fees without an adequate showing of need. Civil Code section 4370 authorizes the award of such attorneys' fees "as may be reasonably necessary" to maintain the proceeding. An award pursuant to this section "is within the trial court's discretion, and will be disturbed on appeal only upon a clear showing of abuse." (In re Marriage of Aufmuth (1979) 89 Cal.App.3d 446, 466 [152 Cal.Rptr. 668]; *In re Marriage of Janssen* (1975) 48 Cal.App.3d 425, 428 [121 Cal.Rptr. 701].) The record indicates that Mrs. Milhan had a net monthly income of only $770, while her monthly expenses were $1,119. Exclusive of attorneys' fees, Mrs. Milhan's debts were $60,000. Including half of the community property from her present marriage, Mrs. Milhan's assets amounted to $21,950. This evidence was sufficient to support the trial court's finding of need. There was no abuse of discretion.

■ One issue remains. Mrs. Milhan contends that the trial court erred in refusing to order restitution of her share of retirement benefits paid between the 1970 dissolution and the 1972 property division. The contention has merit. The trial court was under a mandatory duty to divide the community property equally. (Civ. Code, § 4800, subd. (a).) Mr. Milhan's stipulation at his wife's request to entry of dissolution in 1970 did not affect the status of the retirement benefits received. (See

Civ. Code, § 5110.) Nor did it establish a valid equitable defense to enforcement of her community property rights. Mrs. Milhan is entitled to her share of the 1970-1972 retirement benefits unless on remand Mr. Milhan is able to demonstrate that an equal overall distribution of community property has already been achieved or that restitution would be inequitable. (See *Schubert* v. *Bates, supra*, 30 Cal.2d at p. 791.)

## IV

Congress has not precluded the application of California community property law to military retirement pay, military insurance policies, or disability pay to the extent received in lieu of retirement.

That part of the judgment which failed to award Mrs. Milhan a community property share in the Veterans' Administration disability pay received by Mr. Milhan in lieu of retirement pay, and failed to divide the retirement pay from the date of trial in 1970, is reversed. In all other respects, the judgment is affirmed. Mr. Milhan shall assume all costs on appeal.

Tobriner, J., Mosk, J., Clark, J., Richardson, J., Manuel, J., and Newman, J., concurred.