474 So.2d 1339 (1985)
James Robert CAMPBELL, Plaintiff-Appellant,
v.
Esther Goldenna CAMPBELL, Defendant-Appellee.
No. 17097-CA.
Court of Appeal of Louisiana, Second Circuit.
August 21, 1985.
Rehearing Denied September 20, 1985.
Writ Denied November 15, 1985.
*1340 James J. Thornton, Jr. and David C. Turansky by David C. Turansky, Shreveport, for plaintiff-appellant.
Cook, Yancey, King & Galloway by Bernard S. Johnson, Shreveport, for defendant-appellee.
Before JASPER E. JONES, FRED W. JONES, Jr., and LINDSAY, JJ.
FRED W. JONES, Jr., Judge.
Esther Goldenna Campbell sued her former husband, James Robert Campbell, for a partition of his military retirement benefits which were not divided in their community property settlement. The trial judge recognized Mrs. Campbell's community property interest in the retirement pay, including that portion of the benefits representing Veterans Administration disability pay received in lieu of retirement pay. Campbell appealed. We affirm for the following reasons.
The Campbells were married in Bossier City, Louisiana, on October 6, 1940. Campbell filed for legal separation September 1, 1959 and Mrs. Campbell reconvened on September 28, 1959. Judgment was rendered granting the reconventional demand and rejecting the main demand on October 29, 1959. Both parties concede that they were domiciliaries of Louisiana and established their matrimonial domicile in Louisiana for the duration of the marriage.
Mr. Campbell raises two issues on appeal: (1) whether the trial judge erred when he determined the termination of the community to be the date of the judgment of separation rather than the date of the original petition for separation; and (2) whether the trial judge erred in determining that Veterans disability benefits received in lieu of retirement pay are subject to Louisiana community property law.
Dissolution of the community upon separation is governed by Louisiana Civil Code Article 155, which has been amended numerous times. Act No. 304 of 1950 amended Article 155 to read:
Separation from bed and board carries with it separation of goods and effects. Upon reconciliation of the spouses, the community may be re-established by husband and wife jointly, as of the date of the filing of the suit for separation from bed and board, by an act before a notary and two witnesses, which act shall be recorded in the conveyance office of the parish where said parties are domiciled but which act shall be without prejudice to rights validly acquired in the interim.
Article 155 was next amended by Act No. 178 of 1962 to read:
The judgment of separation from bed and board carries with it the separation of goods and effects and is retroactive to the date on which the petition for same was filed, but such retroactive effect shall be without prejudice (a) to the liability *1341 of the community for the attorneys' fees and costs incurred by the wife in the action in which the judgment is rendered, or (b) to rights validly acquired in the interim between commencement of the action and recordation of the judgment. Upon reconciliation of the spouses, the community may be re-established by husband and wife jointly, as of the date of the filing of the suit for separation from bed and board, by an act before a notary and two witnesses, which act shall be recorded in the conveyance office of the parish where said parties are domiciled, but which act shall be without prejudice to rights validly acquired in the interim between rendition of the judgment and recordation of the act of reconciliation.
Comparison of the two acts reveals that the retroactivity provision of Article 155 was not in the law until the effective date of the 1962 legislative act (August 1, 1962). The 1962 amendment to Article 155 has been held to be nonretroactive. LaFleur v. Guillory, 181 So.2d 323 (La.App. 3d Cir.1965), writ denied 248 La. 1099, 184 So.2d 24. Therefore, the law applicable to the Campbells, who were separated in 1959, is Act No. 304 of 1950. Consequently, the date of termination of the community is the date of the judgment of separation, October 29, 1959. The trial judge was correct.
The trial judge, in an excellent written opinion, thoroughly discussed the second issue. We adopt his opinion as follows:
"Mr. Campbell testified that twenty-three years, seven months and four days was the total time he served in the military, prior to his retirement on June 30, 1963. In addition, Mr. Campbell's testimony, corroborated by Mrs. Campbell, indicates the active duty service credited toward retirement rights, during the existence of the community totaled seventeen years, three months and twenty-two days. During Mr. Campbell's military service he suffered a broken ankle from a motorcycle accident and also a heart attack.
"Limited evidence was introduced as to the nature of the retirement benefits Mr. Campbell is receiving. From the "Air Force Retiree Annuitant Account Statement" (Exhibit D-1), the Court outlines the following:

Gross Pay: $848.85
Deductions:
 1. Veterans Administration $487.00
 2. Survivor Benefit Annuity 47.95
 Program
 3. Federal Income Tax 13.67
 Withholding
 4. Allotment for V.A. Life 23.80
 _______
 Insurance ($572.42)
Net Pay: $276.43
 _______
 _______

"Mrs. Campbell urges that she is entitled to receive payments from this military benefit equal to: `½ of 21/24 of $848.85 or $373.50.' She bases this on her entitlement to one-half of the gross pay attributable to twenty-one years of service during the marriage.
"Mr. Campbell urges that Mrs. Campbell is entitled to: "36.5% of $276.43 or $100.89". He relies on her entitlement to one-half of the net pay attributable to slightly more than seventeen years of service during the marriage.
"Congress enacted 10 U.S.C. § 1408 (effective February 1, 1983) in response to the Supreme Court decision McCarty v. McCarty, 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981), which barred states from recognizing the community interest in nondisability, military retirement benefits.
"10 U.S.C. § 1408(c)(1) provides that:
`Subject to the limitation of this section, a court may treat disposable retired or retainer pay payable to a member for pay periods beginning after June 25, 1981, either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court.' Emphasis supplied.
"Pursuant to this statute, the Court may recognize the former wife's community interest in Mr. Campbell's `disposable retired pay'. 10 U.S.C. § 1408(a)(4)(A)-(F) defines `disposable retired or retainer pay' as follows:
`... the total monthly retired or retainer pay to which a member is entitled (other than the retired pay of a member retired *1342 for disability under Chapter 61 of this title) less amounts which
... (B) are required by law to be and are deducted from the retired or retainer pay of such member, including ... amounts waived in order to receive compensation under title 5 or title 38; (C) are properly withheld for Federal, State, or local income tax purposes ...; (E) are deducted as Government life insurance premiums ...; or (F) are deducted because of an election under chapter 73 of this title to provide an annuity to a spouse or former spouse ...' Emphasis supplied.
In accord with this definition, this Court recognizes the former wife's interest in Mr. Campbell's net pay of $276.43. The deduction for the `Veterans Administration' is excluded in subsection (B) since it is an amount waived in order to receive disability compensation under Title 38. The `Survivor Benefit Annuity Program' deduction is excluded in subsection (F). The `Federal Income Tax Withholding' deduction is excluded in subsection (C), and the `Allotment for Veterans Administration Life Insurance' is excluded in subsection (E).
"Having recognized Mrs. Campbell's interest in the disposable portion of the retirement pay, pursuant to 10 U.S.C. § 1408, the Court will now consider whether a community interest in the portion of the benefits received as Veterans Administration disability pay in lieu of retirement pay, pursuant to a waiver under Title 38, may be recognized. The Court finds the question to be res nova in our state and finds there to be a split of authority among other community property jurisdictions. See generally Pension or Retirement Benefits as Subject to Award or Division by Court in Settlement of Property Rights Between Spouses, 94 A.L.R.3rd 176, at 222 (1979).
"Under Louisiana law, absent federal preemption, military retirement pay is community property to the extent attributable to employment during the community. Rohring v. Rohring, 441 So.2d 485 (La. App. 2d Cir.1983); Sims v. Sims, 358 So.2d 919 (La.1978). Thus, the retirement benefits Mr. Campbell receives pursuant to Title 38 (also shown on Exhibit D-1 as the Veterans Administration deduction of $487.00) may be classified as community property and Mrs. Campbell's interest therein recognized if a federal statute does not preempt Louisiana's law. In other words, the benefits may be partitioned unless Congress has by direct enactment precluded Louisiana courts from applying community property rules.
"Failure to include the benefits within 10 U.S.C. § 1408(c)(1) arguably leads to the conclusion that Congress' intent was to preclude states from recognizing a community interest in the payments. However, the statute does not specifically deal with the classification of disability military retirement benefits. The statute was Congressional response to McCarty, which dealt solely with nondisability military retirement benefits. See Evans v. Wells, 408 So.2d 5 (La.App. 3rd Cir.1981); Coates v. Coates, 650 S.W.2d 307 (Mo.App.1983). It allows recognition of a community interest in regular retirement pay, but fails to address the recognition of a community interest in any other retirement benefits, including those received under Title 29 (Employee Retirement Income Security Act), 22 (Foreign Service Retirement), 5 (Civil Service Retirement), 45 (Railroad Retirement Act), 42 (Old Age, Survivors, and Disability Insurance Family Benefit Plan), and 38 (Veterans Administration Benefits). The retirement benefits are established by different statutory schemes. The various statutory schemes control the fact of, or lack of, federal preemption and the property characterization of the benefits. Ex Parte Burson, 615 S.W.2d 192 (Tex.1981). This Court concludes 10 U.S.C. § 1408 is not dispositive of the question of whether a former spouse has a recognizable interest in disability military retirement benefits received pursuant to a Title 38 waiver.
"Mr. Campbell, a disabled serviceman, has two options under 10 U.S.C. § 1401 for computation of his retirement pay. First, the pay may be computed on the basis of rank and length of service. Second, the pay may be computed by multiplying basic pay times the percentage of disability before *1343 retirement. Under the first option, all of the amount is community property to the extent earned by service during the marriage. This community interest is not defeated by selection of the second method of computation. In re Marriage of Stenquist, 21 Cal.3d 779, 148 Cal.Rptr. 9, 582 P.2d 96 (1978).
"Mr. Campbell also has an option to receive disability payments from the Veterans Administration. These payments are not subject to federal income taxation, and in order to receive them, a waiver of an equivalent amount of retirement pay must be executed. 38 U.S.C. § 3105 (1958). Taking advantage of the tax benefit, Mr. Campbell chose to execute a waiver of the U.S.C. § 1201, et seq., retirement pay and to receive tax-free payments from the Veterans Administration pursuant to 38 U.S.C. § 3105. The payments currently are for the amount of $487.00 a month.
"Texas courts have concluded that execution of this waiver defeats any community interest in the payments. Ex Parte Burson, 615 S.W.2d 192 (Tex.1981); Arrambide v. Arrambide, 601 S.W.2d 197 (Tex. App.1980); Ex Parte Johnson, 591 S.W.2d 453 (Tex.1979). See also Miller v. Miller, 98 N.M. 497, 632 P.2d 732 (1981) in which the New Mexico court applies Texas law. The Texas Supreme Court in Burson and Johnson concluded that the supremacy clause of the United States Constitution preempts a division of VA benefits as community property. The Court found that the intent of Congress was for the benefits to be solely for the use of the disabled veteran. They found the payments were not an earned property right, but a gratuitous payment personal to the serviceman, which is subject to termination by waiver. The Court relied upon 38 U.S.C. § 3101(a) (1976) which provides in part:
`Nonassignability and exempt status of benefits
`Payments of benefits due or to become due under any law administered by the Veterans Administration shall not be assignable except to the extent specifically authorized by law, and such payments shall be exempt from taxation, shall be exempt from the claim of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary.' Emphasis supplied.
Comparing the language with that contained in the Railroad Retirement Act, 45 U.S.C. § 231m (1976), and citing Hisquierdo v. Hisquierdo, 439 U.S. 572, 99 S.Ct. 802, 59 L.Ed.2d 1 (1979) (the decision with respect to the Railroad Retirement Act), the Texas court decided the benefits were not divisible.
"California courts, on the other hand, have concluded that the division of Veterans disability benefits does not violate federal supremacy, since the benefits perform the same function as retirement pay. In Re Marriage of Stenquist, 21 Cal.3d 779, 148 Cal.Rptr. 9, 582 P.2d 96 (1978); In Re Marriage of Milhan, 27 Cal.3d 765, 166 Cal.Rptr. 533, 613 P.2d 812 (1980). Based on community property principles, the courts reason that an election, wholly within the control of one spouse, cannot defeat the community interest of the other spouse. Classification for administrative purposes does not change the function of the pension, which is to replace `retirement' pension and provide support for the serviceman and his spouse after he leaves the service. California courts do recognize the separate character of the disability payments, to the extent they exceed the amount of the retirement pay waived. This is not an issue in our case, however, since Mr. Campbell waived an amount of retirement pay equivalent to the amount of disability pay received.
"The decision in Milhan reflects California's rejection of Texas' rationale. First, the Court rejects the argument that the Railroad Retirement Act or Hisquierdo governs this case. They find the principal grounds rested on for preemption in the railroad retirement pension area do not apply to military pensions. Second, the Court rejects the proposition that 38 U.S.C. § 3101(a) demonstrates federal preemption.
`Mr. Milhan's attempt to avoid state law by citing the "spendthrift" provision [38 U.S.C. 3101(a)] the Veterans Administration *1344 applies to the benefits it administers would substitute a "conflict in words" for the practical clash of interests which the Supreme Court has required for preemption. Where a practical understanding of state and federal objectives demonstrates that both may be fully achieved, comity precludes the preemption of state law based only on semantic inconsistencies.' In Re Marriage of Milhan, id [166 Cal.Rptr. at 539, 613 P.2d] at 818. Cites and footnotes omitted. Emphasis supplied.
Furthermore, in Footnote 12 the Court emphasized that:
`... Significantly, this provision does not apply to disability benefits distributed as retirement pay under Title 10 of the United States Code, since these benefits are not administered by the Veterans Administration. This limited scope militates against a finding that section 3101(a) manifests a congressional intent to preempt application of state community property claims to all payments classified as "disability" benefits by federal statute.' In re Marriage of Milhan, id [166 Cal.Rptr. at 539, n. 12, 613 P.2d] at 818, n. 12. Emphasis supplied.
"Succession of Scott, 231 La. 381, 91 So.2d 574 (1956) is of some help in deciding the question before the Court. It is, however, the only case in Louisiana discussing `disability' retirement payments. The Court found that the pension was not a gratuity to the serviceman and that the investments realized from the pension constituted assets of the community. Thus, Louisiana rejects, in part, the Texas court's rationale.
"Also of limited help is Heisterberg v. Standridge, 656 S.W.2d 138 (Tex.App.1983) in which the Texas court concluded that pension payments under the Civil Service Retirement Act, 5 U.S.C. § 8331, et al (1980) may be partitioned between spouses. The court cites a provision similar to 38 U.S.C. § 3101(a), but concludes that it does not require finding federal preemption. See 5 U.S.C. § 8346(a) (1980).

* * * * * *
"This Court finds the conclusion reached by the California courts preferable. We find no federal law which directly or positively precludes application of Louisiana's community property law. Therefore, the Court concludes that Mrs. Campbell has a recognizable community interest in the payments received by Mr. Campbell pursuant to the U.S.C. § 3105 election. Mr. Campbell was entitled to receive regular military retirement benefits, which would be community property to the extent earned during the existence of the community. For tax purposes, Mr. Campbell chose to receive equivalent benefits from the Veterans Administration and to waive receipt of the retirement pay. This does not defeat Mrs. Campbell's community interest.
"In summary, this Court finds that since the parties were domiciled in Louisiana throughout their marriage, Mrs. Campbell is entitled to have recognized her interest in Mr. Campbell's military retirement payments, when they actually become payable, in the proportion that they are attributable to the husband's service during the community. According to the formula in Sims v. Sims, supra, at 924, Mrs. Campbell's interest is calculated as follows:
(1) Portion of pension attributable to creditable
 service during existence of community × ½ × Monthly community
 retirement
 payment
 _____________________________
 Pension attributable to total
 creditable service
(2) Portion of pension attributable to creditable service
 during existence of community = 17 years, 3 months,
 and 22 days, or 6,318 days
*1345
(3) Portion attributable to total creditable
 service = 23 years, 7 months and 4 days,
 or 8,612 days
(4) Monthly, community retirement payment = $763.43
 Gross Pay: $848.85
 Less:
 (a) Survivor Benefit $47.95
 (b) Fed. Income Taxes 13.67
 (c) Allotment 23.80
 ______
 $85.42 - 85.42
 _______
 Net: $763.43
(5) 6318 days × 1 = (.73) × (.50) = .3668 or 36.68%
 ____ -
 8612 days 2
(6) Wife's share of the community attributable to her interest = 36.68% of $763.43
 = $280.02 monthly
"Recognizing that the monthly payments may vary in amount in the future, the Court finds Mrs. Campbell's interest to be 36.68% of Mr. Campbell's gross pay less the deductions for the Survivor Benefit Annuity Program, Federal Income Tax Withholding and the allotment for Veterans Administration Life Insurance."
Campbell urges that we follow the case of Inzinna v. Inzinna, 456 So.2d 691 (La.App. 3rd Cir.1984) to the extent that the court excluded Mr. Inzinna's disability pay from figuring "disposable retired or retainer pay." The third circuit relied on 10 U.S.C. § 1408(a)(4) which states in pertinent part:
(4) "Disposable retired or retainer pay" means the total monthly retired or retainer pay to which a member is entitled (other than the retired pay of a member retired for disability under chapter 61 of this title)....
This statute refers to retirement pay which is received by a member who is retired for disability under Chapter 61. Chapter 61 regulates the early retirement of servicemen who are no longer able to serve because of their disability. This is not the situation in the instant case. Consequently, Inzinna is distinguishable.
In conclusion, we hold that the trial judge correctly applied the law applicable on the date the parties separated in determining the termination date of the community. Furthermore, we hold that the mere designation of a portion of retirement pay as disability pay for tax purposes cannot defeat the vested community property interest of a former spouse. Alternatively, we hold that 10 U.S.C. § 1408 was enacted in response to McCarty, supra, and did not expressly preempt state classification of disability pay as community. On the contrary, the intent of the legislation was to protect former spouses by overruling McCarty.[1]
We therefore affirm the trial court judgment, with costs of appeal assessed to appellant.
LINDSAY, Judge, dissenting in part.
I respectfully dissent from that portion of the majority opinion which holds that federal law does not preempt application of state community property law to a veteran's disability income.
The United States Supreme Court in McCarty v. McCarty, 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981), held the supremacy clause of the federal constitution precluded application of state community property laws to division of military retirement benefits pursuant to a division of community property. In response to McCarty, Congress enacted 10 U.S.C.A. § 1408 to allow application of state law to military retirement benefits. However, this statute limits application of state law *1346 to "disposable retired or retainer pay." The wording of 10 U.S.C.A. § 1408(a)(4)(B) defines "disposable retired or retainer pay" and excludes from that definition amounts waived in order to receive veteran's benefits. Because Congress has specifically excluded from disposable retired or retainer pay the amounts waived in order to receive veteran's benefits, and in light of 38 U.S. C.A. § 3101(a) which provides for the non-assignability and exempt status of such benefits, the amounts paid to appellant as disability income from the Veterans Administration cannot be made the subject of state community property laws. See also Ex parte Burson, 615 S.W. 192 (Tex.1981) and Miller v. Miller, 98 N.M. 497, 632 P.2d 732 (1981) as well as Inzinna v. Inzinna, 456 So.2d 691 (La.App. 3d Cir.1984), in which similar issues were presented.
Federal law preempts application of state community property law to a veteran's disability income. I respectfully dissent from that portion of the majority opinion which holds to the contrary.
NOTES
[1] We do not reach the issue of whether disability pay received in excess of retirement pay can be classified as community property.